UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | |
|---|---|
| TONY D. TOWNLEY and<br>ELIZABETH A. TOWNLEY,<br>　　　　　　　Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br>　by and through its Agent,<br>　The Commissioner of Internal Revenue,<br>　　　　　　　Defendant. | )<br>)<br>)<br>)　Civil Action No. _____<br>)<br>)　<u>JURY DEMAND</u><br>)<br>)<br>)<br>) |

## COMPLAINT FOR FEDERAL TAX REFUND

## I. <u>NATURE OF ACTION</u>

1.　　Plaintiffs Tony D. Townley ("Tony") and his wife, Elizabeth A. Townley ("Elizabeth", together "the Townleys") seek refunds (with interest as provided by law) of overpaid federal income taxes for taxable years ended December 31, 2018, December 31, 2019, and December 31, 2020.

2.　　The overpayments result from recognition of conservation contributions encouraged by Congress through 26 U.S.C. § 170(h).

3.　　The action arises under an act of Congress for internal revenue, and Defendant is the United States government, acting by and through its agent, the Internal Revenue Service ("IRS").

## II.  <u>JURISDICTION AND VENUE</u>

4.      Title 28 U.S.C. §§ 1340 and 1346(a)(1) confer original jurisdiction on this Court over this suit for refund of federal individual income taxes.

5.      Venue properly lies in this District pursuant to 28 U.S.C. § 1402(a)(2) because Plaintiffs Tony and Elizabeth Townley reside in this judicial district at 4601 Hog Mountain Road, Bogart, Georgia 30622.

6.      The family partnership of the Townleys, Log Creek LLLP ("Log Creek") elected out of the Uniform Partnership Procedures pursuant to 26 U.S.C. § 6221(b) as a small partnership consisting of two individual partners.  Hence, this action proceeds on behalf of the Townleys.

7.      The Townleys filed individual claims for refund (and associated Amended U.S. Partnership Returns[1]) no later than April 26, 2022, as follows:

| Year | Claim/Am. U.S. Ind. Tax Return | Am. U.S. P'ship Return |
|------|-------------------------------|------------------------|
| 2018 | Ex. A | Ex. B |
| 2019 | Ex. C | Ex. D |
| 2020 | Ex. E | |

8.      Pursuant to 26 U.S.C. § 6532(a)(1), the subject claims for refund have been pending for six months or more.  Therefore, the Townleys timely invoke the jurisdiction and protection of this Court.

---

[1] Because the 2020 refund flows from the carryover of the unused charitable deductions on the 2018 and 2019 individual returns, no amendment of the 2020 partnership return was appropriate.

## III.   **FACTUAL BACKGROUND**[2]

<u>Overview</u>

9.      Across the years, Tony and Elizabeth Townley invested much, if not most, of their after-tax dollars in protecting farm and timberland against the inevitable Atlanta sprawl east to Augusta.

10.      After a large mining company contaminated the water table in a mine next to their timberland in 2017, they investigated the Congressional conservation tax incentive under 26 U.S.C. § 170(h) to prohibit mining or other valuable development of their most vulnerable properties forever.

11.      When they learned (after having restricted their properties) that the IRS discouraged the conservation Congress encourages, they made doubly sure that their conservation contributions did exactly what Congress wanted.

12.      Still, the IRS presses hypertechnical excuses to ignore their contribution altogether as a *de facto* administrative repeal of the conservation inducement statute enacted by our democratically elected Congress.

13.      The Townleys ask for an accurate determination of their taxes and a refund of their overpaid taxes under a fair application of the policy-based statute.

---

[2] This "Factual Background" (and its mixed matters of fact and law) provide context and should not be viewed as varying from the grounds stated in the U.S. Amended Individual Income Tax Returns (Forms 1040X) filed on behalf of the Townleys and the Amended U.S. Partnership Returns (Forms 1065) filed on behalf of their family partnership Log Creek for tax years 2018 through 2020 (Exs. A-E).

From a Family Christmas Tree Farm through Zaxby's to Preserving Timberland

14.    Tony Townley grew up on a farm in Bogart, Georgia, outside of Athens.

15.    At least since seventh grade, his best friend has been Zach McLeroy.

16.    In high school, Tony and his friend worked various odd jobs together but Tony also worked with his father growing Christmas trees on their farm.

17.    While Tony was growing Christmas trees through high school, his friend was cooking and serving fried chicken fingers at a local fast-food restaurant.

18.    After high school, Tony initially enrolled and attended the University of Georgia ("UGA").  The joys of UGA distracted him from his studies.

19.    He transferred to Georgia Southern in Statesboro.

20.    His friend spent a lot of time with Tony in Statesboro.

21.    At Georgia Southern, Tony met Elizabeth who lived in Statesboro and also attended Georgia Southern.  Elizabeth was (and is) a stabilizing force.

22.    Upon finishing Georgia Southern, Tony returned to Bogart to work with his father (and another gentleman) growing and selling Christmas trees.

23.    Tony asked Elizabeth to marry him and she agreed.

24.    They married in 1987.

25.    In time, they were able to move onto the farm next to Tony's parents.

26.    In addition to working the Christmas tree farm with his father and the other gentleman, Tony started a mortgage business.

27.    Tony's friend worked for the mortgage business for a while but concluded it just did not fit his personality.

28.    He and Tony came up with the idea of starting a fried chicken finger restaurant in Statesboro close to the Georgia Southern campus.

29.    Tony's friend always thought he would be a rock-n-roll drummer but sold his drum set to raise $8,000 for his share of starting the restaurant.

30.    Tony scraped together $8,000 from what little he and Elizabeth had.

31.    In March of 1990 only three years after Tony married, Tony and his friend opened their first restaurant in Statesboro as 50/50 partners and named it Zax.

32.    The new business ate all the money, Tony had to keep selling mortgages to feed his family, and his friend moved into the condemned building across the street from Zax.

33.    At times, Tony would work his day job, drive to a restaurant, mix sauce with Zach until 5:00 a.m., grab a couple of hours of sleep, and then do it again.

34.    Through hard work, long hours, resiliency, and risking everything they had, they developed the secret sauce, expanded the menu, and grew their premium fast-service fun restaurants from one site to another.

35.    Then in 1994, Tony and his friend concluded they could grow the restaurants faster by helping others achieve their dreams through owning and operating their own franchises.  Tony and his friend changed the name to Zaxby's.

Investment in Preserving Rural Georgia

36.     The hard work in growing Zaxby's turned into success beyond Tony and his friend's wildest dreams.

37.     Tony poured much of that success into Log Creek, LLP, the family partnership he shared then – and still shares – on a 50/50 basis with Elizabeth.

38.     Tony and Elizabeth believe in preservation.

39.     The Townleys preserved the UGA Agriculture Department research farm near their farm.  To further preserve farming, they personally contributed $3.5 million to the UGA Agriculture Department along the way.

40.     The Townleys preserved the dilapidated UGA Red Barn which they moved from Athens out to the former UGA farm and restored it.

41.     Tony preserves old cars and classic signs as a connection with the past.

42.     Like everyone else in North Georgia, Tony and Elizabeth recognized that Atlanta sprawl threatens to eat all undeveloped land east of Atlanta to Augusta.

43.     Unlike most in North Georgia, they decided to do something about it.

44.     Through their family partnerships, they decided to preserve as much farm and timberland as they could.

45.     To this day, both Tony *and* Elizabeth work the land.

46.     Elizabeth *and* Tony drive tractors cutting and hauling hay, pull up fence posts, put out minerals and feed for the cattle, and monitor the timberland.

47.     With no second thought, they felt good about Log Creek preserving land until 2017 when they learned a large mining company contaminated the water table next to some of their Log Creek property with an industrial chemical.

48.     That threatened to contaminate the water table for the entire area.

49.     Tony investigated what could be done, engaged environmental counsel, but ultimately concluded that no complete cure existed after the contamination.

50.     From real estate and timber conferences, Tony and his advisors knew about shorter term conservation easements and had heard about perpetual conservation easements.

51.     Tony and his team never took a hard look at protecting the land forever through perpetual conservation easements until the mining company contamination.

52.     Tony and Elizabeth learned that Congress encouraged landowners of undeveloped lands to conserve them forevermore through a federal perpetual conservation easement tax incentive.

53.     By barring any mining or development forever, the landowner and his or her children, children's children, and future generations sacrifice great value.

54.     As an incentive to make that sacrifice, Congress promises a charitable deduction equal to the full value of the sacrifice.

55.     Anything less discourages conservation by everyone.

Elements of a Congressionally Encouraged "Qualified Conservation Contribution"

56.     As the Eleventh Circuit held in *Pine Mountain* and reinforced in *Champions Retreat*, a "Qualified Conservation Contribution" (like these) under the conservation inducement statute (26 U.S.C. § 170(h)) "doesn't require much":

      a.    Contribution of a "Qualified Real Property Interest" (that is, "*a* [any] restriction (in perpetuity)" on the use of land);

      b.    To a "Qualified Donee" (including a 26 U.S.C. § 501(c)(3) and 509(a)(2) charitable organization like Oconee River Land Trust);

      c.    "Exclusively for conservation purposes" (that is, one or more of five listed conservation purposes that are *better* protected with the restriction than without).

57.     Five documents for each contribution dispose of all elements.

2018 Conservation Contribution

58.     After the 2017 contamination, Tony and his advisors identified the Log Creek tract that was most vulnerable to strip mining sooner or later.

59.     They recognized that the 240-acre Log Creek Norris-Cason Tract in Warren County faced the greatest probability of strip mining because Tony and his forester had seen more extensive granite outcroppings above ground there.

60.     Just as he relied on the people around him at Zaxby's, Tony found the best advisors he and his advisors could find to handle the Norris-Cason contribution.

61.     Independent geologists directed the core drilling, determined the size and the granite reserve, and then valued that reserve.

62.     Experienced real estate appraisers then valued the contribution under the accepted Discounted Cash Flow ("DCF") and Before-and-After methods.

63.     The Townleys went the extra mile of engaging a separate highly qualified appraiser (Mr. Hayter) to review and recommend improvements.

64.     Mr. Hayter advised the Townleys that the restated, improved, original appraisal constituted a "qualified appraisal" by "qualified appraisers."

65.     The Townleys and their advisors also engaged the leading wildlife biologist in that part of Georgia, Elizabeth Branch with Natural Resource Consultants, LLC in Madison, Georgia, to prepare an environmental analysis.

66.     The advisors recommended the Oconee River Land Trust, Inc., headquartered in Athens, Georgia ("Oconee River LT") as the best charitable conservation organization to protect the land as the perpetual Donee.

67.     Oconee River LT is a charitable conservation group in Athens, created by UGA professors and other conservation-minded citizens.

68.     Oconee River LT proved enormously helpful in all aspects, including a model conservation deed, inspection and approval process, annual monitoring, and heightened conservation standards like the no-cut "Special Natural Areas" covering the "High Priority Habitats" designated by the Georgia Department of Natural Resources ("DNR") Wildlife Action Plan and the Riparian Buffer that (at 200 feet) is eight times wider than the Best Management Practices riparian standard.

69.     By exempt organization letter, the IRS recognizes the Oconee River LT as a qualified charitable organization under 26 U.S.C. §§ 501(c)(3) and 509(a)(2).

70.     Based on the core drilling and an exhaustive investigation of other aspects, Tony and Elizabeth decided to contribute a perpetual conservation easement on the Log Creek Norris-Cason Tract to Oconee River Land LT.

71.     By Deed of Conservation Easement recorded by the Superior Court Clerk for Warren County on December 28, 2018 ("2018 Conservation Deed"), Log Creek conveyed a perpetual conservation easement over the Norris-Cason Tract to Oconee River LT as a charitable donation for no financial consideration.

72.     By letter dated January 23, 2019, Oconee River LT acknowledged receipt of the contribution in writing and confirmed that it paid no consideration.

73.     Log Creek timely reported that Conservation Contribution on its original U.S. Partnership Return for 2018, with the five controlling documents: Conservation Deed, complete appraisal (including geological analysis), environmental baseline report, Form 8283, and donee written acknowledgment.

74.     The Townleys knew they could not use the entire 2018 Conservation Contribution deduction on their 2018 individual return.

75.     Still, Log Creek and the Townleys did exactly what Congress wanted— they conserved the land (and its "High Priority Habitats") forevermore.

2019 Conservation Contributions

76.   In 2019, the Townleys and their advisors identified three other vulnerable tracts with granite outcroppings and the inevitable threat of mining sooner or later.

77.   The first is also located in Warren County (the "Wheeler Tract").

78.   The 156.67 acres Wheeler Tract was separately protected in June 2019.

79.   The next property is located in Wilkes County (the "Heard Road Tract").

80.   The Heard Road Tract consists of 280.78 acres.

81.   The third is located in Taliaferro County ("Brown Harris Tract").

82.   The Brown Harris Tract consists of 272.98 acres.

83.   But for differences in the property location, size, value, and dates, the five documents on each 2019 contribution mirror the five 2018 contribution documents in all respects material to the conservation inducement statute.

84.   Under the parallel, if not identical, terms of the 2018 and 2019 Conservation Deeds (*e.g.,* the conveyance clauses and Articles 1 ("Purpose"), 2 ("Duration"), 3 ("Rights of Grantee"), 4 ("Reserved Rights of Grantor") and 5 ("Prohibited and Restricted Activities")), those Deeds protected these properties against mining and development forever.

85.   For all of the 2019 tracts, Tony, Elizabeth, and their family partnership again got the most experienced help they could find.  But they did not stop there.

Doubly Sure Contributions Properly Reported

86.   After contributing the 2019 Conservation Contributions (but before the due date of the 2019 returns), the Townleys and their advisors learned of IRS hostility toward all conservation easements including those by family partnerships.

87.   The Townleys wanted to make doubly sure that they complied with the Congressional inducement statute.  If a dispute arose, they trusted the District Court.

88.   As a result, they amended their 2018 Log Creek U.S. Partnership Return before any partnership audit notice by the IRS and were in the process of amending the Townleys' 2018 U.S. Individual Income Tax Return when they received an IRS individual audit notice.  Those amended returns reversed the contributions until the Townleys could double check the original work with new independent experts.

89.   The Townleys and their family partnership then hired that second set of geologists, biologists, and appraisers to independently determine all aspects.

90.   That is, the Townleys *twice* worked through the extraordinary complexity and expense to get it right.

91.   The IRS pressed forward with auditing the 2018 Norris-Cason contribution for 11 months.  Unseen IRS personnel called the shots.

92.   The agent was courteous but controlled by IRS institutional instructions.

93.   At all times, the Townleys and their representatives cooperated with the IRS, including Tony voluntarily agreeing to be interviewed.

94.     The Townleys and their family partnership simply asked the IRS to follow the law and facts that govern the contributions Congress encourages.

95.     Rather than trying to reach a fair or accurate answer, the IRS resorted to its standard anti-conservation, internally inconsistent, hypertechnical excuses for disregarding the 2018 Conservation Contribution altogether.

96.     The IRS issued its Examination Report (attached as Exhibit F) completely disregarding the 2018 perpetual Conservation Contribution on the Norris-Cason Tract altogether for four stated reasons.

97.     First, the IRS retroactively asserted that the environmental baseline report by wildlife biologist Elizabeth Branch in nearby Madison, Georgia failed to meet Treas. Reg. § 1.170A-14(g)(5) under an unprecedented reading.

98.     The IRS reading contravenes its plain meaning and validity:

    a.     The 26 U.S.C. § 170(h) conservation easement statute does not require an environmental baseline report.

    b.     As the United States Court of Appeals established in *BC Ranch II v. Commissioner*, 867 F.3d 547 (5th Cir. 2017), the regulation only sets forth a series of permissive ("*may* include") examples.

    c.     The detailed report by Ms. Branch provides more information, "maps and photographs" than the plain meaning of the IRS regulation requires with its permissive examples of "maps and photographs."

    d.    The IRS asserts that its regulation somehow requires laboratory testing of the surface water and possibly drilling of the subsurface water. The regulation the IRS drafted does not say that: immediately following the reference to special resources, the IRS regulation immediately refers back to the "maps and photographs" in the permissive examples Ms. Branch exceeded.

    e.    The retroactive reading manufactured by the IRS 20 years after the IRS drafted and adopted its regulation[3] contradicts two separate provisions in the statute recently interpreted and sustained by the Eleventh Circuit in *Pine Mountain Preserve, LLP v. Commissioner*, 978 F.3d 1200, 1206-08 (11th Cir. 2020), and *Champions Retreat Golf Founders, LLC v. Commissioner*, 959 F.3d 1033 (11th Cir. 2020).

    f.    And the IRS itself violated the Administrative Procedures Act ("APA") in adopting the regulation just as it violated the APA in adopting the IRS conservation easement regulation stricken in *Hewitt v. Commissioner*, 21 F.4th 1336, 1339 (11th Cir. 2021).

99.    Ultimately, the IRS dismisses Ms. Branch's report on the contention it contained no signed certification by the donee or donor. Not true: it did.

100.    Second, the IRS challenges the conservation purpose of the conservation contribution in the face of the Eleventh Circuit rejecting the same IRS fertilizer argument in *Champions Retreat*, *supra*. Moreover, the IRS Examination Report implies its regulation requires the sighting of "rare, threatened, or endangered species" when it specifically denies that is required.

101.    Consistent with the inducement statute, the contribution need only preserve "relatively natural habitat for plants, fish, wildlife, and similar ecosystems."

---

[3] The IRS is the part of the Treasury Department responsible for taxes – including regulations.

102.  Next, the IRS Examination Report urges the internally conflicted contention that the *two* contemporaneous appraisers engaged by the Townleys are not "qualified appraisers" because they relied on geologists rather than possessing their own separate geology expertise.

103.  In fact, those two appraisers possessed extensive experience valuing mineral properties (in conjunction with geologists).

104.  But that is not the contradictory point.  The IRS Examination Report promptly relies on the IRS Chicago and D.C. appraisers who not only lack any geology expertise:  they ignore all the known facts and circumstances relating to the core drilling and geological analysis.

105.  As with the standard of practice adopted for lawyers, accountants, and doctors, the *Uniform Standards of Professional Appraisal Practice* encourage association of those who possess specialized knowledge.  *See* Appraisal Standards Board, The Appraisal Foundation, *Uniform Standards of Professional Appraisal Practice*, p. 11, 1. 322-324 (2018-2019 ed.) ("Competency can be acquired in various ways, including, but not limited to, personal study by the appraiser … or retention of others who possess the necessary knowledge and/or experience").

106.  The IRS Examination Report then combines its attack on the contemporaneous appraisers with an attack on their appraisal.

107.   The IRS Report condemns that appraisal because the Townleys went the extra mile of having a third independent appraiser review the appraisal and recommend improvements.   The original appraisers then implemented all improvements in their restated appraisal with which they agreed – with the result of a reviewed and improved original appraisal.

108.   The third independent appraiser then confirmed that the improved and restated appraisal constituted a "qualified appraisal" by "qualified appraisers."

109.   Even if one second guessed the original 2018 appraisal, the Townleys and their family partnership reasonably relied on the assurances that it constituted a "qualified appraisal" by "qualified appraisers" and therefore, the Townleys and Log Creek possessed reasonable cause under 26 U.S.C. § 170(f)(11).

110.   Before filing amended returns, the Townleys and their advisors ensured those IRS technical excuses do not apply to the 2018 or 2019 Contributions.

111.   Finally, the IRS Examination disputes the value of the 2018 Norris-Cason contribution based on (i) a geological professor who criticizes with no opinion as to reserve value and (ii) the Chicago and D.C. appraisers who ignore the known and knowable geological data (including the core drills) altogether.

112.   By contrast, the Townleys and Log Creek engaged new independent geologists and a highly qualified real estate appraiser who holds an engineering degree from Georgia Tech, the finest engineering school in the South if not beyond.

16

Evidence of "Qualified Conservation Contribution" Elements

113.   As noted, 26 U.S.C. § 170(h) defines a "Qualified Conservation Contribution" as the transfer of a "Qualified Real Property Interest" to a "Qualified Organization" "Exclusively for [one or more of five] Conservation Purpose[s]."

    a.   Qualified Real Property Interests

114.   State law determines property rights for federal tax purposes.

115.   The Article 17.A Controlling Law provision in each of the four Log Creek Conservation Deeds provides that Georgia law controls.

116.   Under Georgia law, these four Log Creek conservation easements constitute interests in real property.  *See*, *e.g.*, O.C.G.A. §§ 44-10-1, *et seq.*: "Georgia Uniform Conservation Easement Act".

117.   The Conservation Easement Deeds each grant a conservation easement to the Oconee River LT.

118.   Articles 2 ("Duration") and 5 ("Prohibited and Restricted Activities") of each of the four Log Creek Conservation Deeds impose at least 12 separate sets of perpetual restrictions on their respective properties.

119.   Each of the Conservation Deeds contains at least "a restriction (granted in perpetuity)" on the use which may be made of the subject property.

120.   The Conservation Deeds do not permit any party to alter the boundaries of or substitute properties for the four conservation easement tracts.

17

b.   Qualified Organization

121.   The grantee under each of the 2018 and 2019 Conservation Deeds remains Oconee River LT, headquartered in Athens, Georgia.

122.   Since its inception in 1993, the Oconee River LT has been a publicly supported nonprofit organization, created primarily for the conservation of the environment by dedicated biologists, professors, environmentalists, and others concerned with conservation. *See* www.oconeeriverlandtrust.com.

123.   Oconee River LT is and was at the time it accepted each of the Conservation Deeds committed to protect the conservation purposes of the Conservation Deeds.

124.   Oconee River LT is and was at the time it accepted each of the Conservation Deeds a "qualified (charitable) organization" under 26 U.S.C. §§ 501(c)(3) and 509(a)(2) of the Internal Revenue Code of 1986 recognized by the IRS.

125.   Oconee River LT continues to fulfill its conservation duties through monitoring inspections and reports at least annually.

126.   Based on their genuine deep-seeded beliefs, the principled people at Oconee River LT have dedicated their lives to conserving natural habitats for wildlife on farms, forests, and other undeveloped land.

c.    Exclusively for Conservation Purposes

127.   As the statute and Eleventh Circuit precedent in *Champions Retreat* establish, the Conservation Deed must only protect (in perpetuity) one or more of five listed conservation purposes (including the two types of "open space").

128.   Of relevance here, all four Log Creek Conservation Deeds protect "relatively natural habitat for plants, wildlife, and similar ecosystems," scenic open space, and open space that furthers any one of many "Federal, State, or local conservation policies."

129.   Satisfaction of any one purpose or policy satisfies the statute.

130.   Each of the Conservation Deeds is legally enforceable, recorded in the proper jurisdiction, and constitutes a contribution exclusively for conservation purposes.

131.   Article 1 of each Conservation Deed specifies its "Purpose" as follows:

> … to assure that the Property will be retained forever in its predominantly relatively natural, forested, open space, and relatively undeveloped condition, and to preserve and protect the IRC Purposes and the Conservation Values of the Property, including productive forestry and agricultural resources, the water quality of streams and wetlands, and a variety of significant natural habitats (collectively, the "Purpose").  Grantor will limit the use of the Property to activities that are consistent with the Purpose of this Conservation Easement and will prevent any use of the Property that will impair or interfere with the Conservation Values of the Property.

132.   "Conservation Values" of the protected Properties include these collective concepts: "the preservation and protection of various significant natural wildlife and plant habitats, hydrologic resources, productive forest resources, and open space values …".

133.   The Premises of the Conservation Easement Deeds also specify that "the Conservation easement ensures 'the preservation of open space (including farmland and forest land) where such preservation is … pursuant to a clearly delineated Federal, State, or local government conservation policy and will yield a significant benefit."

134.   The Premises also identify some of the significant governmental conservation policies that benefit the public, ranging from "High-Priority Habitats" under the region-specific Georgia State Wildlife Action Plan ("SWAP") to protection of High Quality streams, wetlands, and watersheds to productive forest and agricultural resources under federal and state conservation plans.

135.   The Premises in the Deeds incorporate the Environmental Baseline Reports prepared by Ms. Branch for Oconee River LT.

136.   As confirmed by her report in the IRS possession since 2019, Ms. Branch is a wildlife biologist qualified to render those reports because she:

a.  Holds a Master of Science in Wildlife Biology and Certificate in Conservation Ecology and Sustainable Development from the University of Georgia;

b.  Has served as owner of Natural Resource Consultants, LLC since 1998; and

c.  Has decades of experience in land conservation and land management.

137.  Ms. Branch inspected all major portions of these properties.

138.  Each of the Environmental Baseline Reports prepared by Ms. Branch

on the 2018 and three 2019 Log Creek Conservation Contributions:

a.  Describes the condition of the subject Log Creek tracts at the time of the contributions through text, Location Map, Survey, Legal Description, Aerial Photograph, Topographic Map (USGS), Georgia Ecoregions Map, Soils Map, Georgia Watersheds Map, Riparian Buffer Map, Conservation Easement Map, Plant List, Ecological Features Map, Man-made Features Map, Nearby Protected Properties Map, Photo Location Map, and Photos;

b.  The Appendices relate to the "Water Resources," "Vegetation and Habitat," "Wildlife," and "Rare or Endangered Species";

c.  Treas. Reg. § 1.170A-14(g)(5) only applies where the exercise of reserved rights may impair the conservation associated with the property – an exercise explicitly prohibited by the four Conservation Deeds;

d.  The Environmental Baseline Report prepared by Ms. Branch on each of the four Log Creek Conservation Contributions contains the information, "Maps and photographs" listed in each of the four Treas. Reg. § 1.170A-14(g)(5) examples; and

e.  As to "particular natural resources" documentation, the IRS regulation does not specify HOW to document those resources beyond immediately referring back to the "maps and photographs."

Common Ground Via FED. R. EVID. 801(d)(2) Admissions

139.   The IRS engaged Dr. Samuel Frimpong, a geology professor at the University of Missouri, to review and opine on the contemporaneous 2018 geological analysis by Geologic, LLC upon which the appraisers for the Townleys relied in valuing the granite reserves on the Norris-Cason Tract.

140.   Consistent with FED. R. EVID. 801(d)(2), the geological report Dr. Frimpong prepared within the scope of his designated responsibilities on behalf of the IRS establishes this common ground:

> *It is the opinion of the reviewer* that the information on general introduction, terms of reference and purpose of the [Geologic] project report, qualifications and experience of the consultants, sources of information, and general descriptions of the mineral resources and reserves are adequate for a preliminary feasibility study report, based on industry standards.  Frimpong Report at 4.

> *It is the opinion of the reviewer* that the reliance of the qualified personnel (QP) on other experts (Log Creek, LLLP, Weibel & Associates, Inc., Resource Technologies, Inc., Colwell Construction Company, Abbott Concepts & Designs, Inc., Tanday Enterprises, Inc., GA DOT, USGS, FL DOT, and Geologic, LLC) is standard industry practice for mine pre-feasibility study.  *Id.*

> *It is the opinion of the reviewer* that the information on property description, location and tenure and accessibility, climate, local resources, infrastructure, and physiography are adequate for mine pre-feasibility study report, based on industry standards.  *Id.*

> *It is also the opinion of the reviewer* that the project history is adequate, based on industry standards for mine pre-feasibility study.  *Id.*

*It is the opinion of the reviewer* that the regional, local and property geology, mineralization, weathering, and alteration are adequately covered in the pre-feasibility study report based on industry standards. *Id.* at 4-5.

*It is also the opinion of the reviewer* that the methods used to characterize the quality of the granite materials are accepted standard industry methods. The rock tests were conducted by Geologic, LLC, an AASHTO R18, ANS/ISO/IEC 17025:2005 and Army Corps of Engineers accredited geotechnical company. These quality methods include the LA Abrasion Test (AASHTO T-96/ASTM C131 - 14), Specific Gravity and Absorption of Coarse Aggregate (AASHTO T-85/ASTM C127 - 15), Clay Lumps and Friable Particles in Aggregate (AASHTO T-112/ ASTM C142-17), and Aggregate Soundness Test (ASTM C88--13). *Id.*

*It is also the opinion of the reviewer* that Geologic, LLC followed the industry sampling quality and test protocols by sampling the core intervals within reputable laboratories. In any case of future verification and validation of the assay values due to discrepancies, uncertainties and errors, the remaining samples will provide the basis for addressing these important issues. *Id.*

*It is also the opinion of the reviewer* that the four (4) soil test borings, 8-1 through B-4, drilled to depths between 0 and 54 feet, and the rock coring carried out to extend the drill holes to depths between 54 and 150 feet below the existing grades using an N-Q-sized core barrel (1 7/8" I.D.) are adequate to generate appropriate samples to characterize the granite resources and reserves. *Id.* at 6.

*It is the opinion of the reviewer* that the markets, product types, demand and supply for the granitic aggregate materials, population densities and growth, transport distances from quarry to point of application or market centers, and state specifications for construction usages, have been adequately covered in the preliminary feasibility study report. Generally, understanding the markets are a pre-requisite determination of the available market share and the penetration rates for these products. *Id.* at 11.

23

*It is the opinion of the reviewer* that the granitic aggregate material prices and their sources are appropriate for a preliminary feasibility study based on industry standards. *Id.* at 12.

*It is the opinion of the reviewer* that the discounted cash flow (DCF) methods, such as the Net Present Value (NPV), is an appropriate method for analyzing the profitability of the mining project. … *Id.* at 16.

Four (4) drill holes were drilled across the 70-acre total reserve area, and they all contained granite of potential value. Each borehole covered 17.5 acres. In addition, the regional geologic factors, evidence of proven adjacent reserves, and several adjacent companies economic reserves on the LCP Property. The coverage of the drill hole in estimating the volumes and tonnages is appropriate to assure continuity, assurance, and confidence. *Id.* at 17-19.

The methods used to characterize the quality of the granite materials are accepted standard industry methods. The rock tests were conducted by Geologic, LLC, an AASHTO R18, ANS/ISO/I EC 17025:2005 and Army Corps of Engineers accredited geotechnical company. These quality methods include the LA Abrasion Test (AASHTO T-96/ASTM C131 - 14), Specific Gravity and Absorption of Coarse Aggregate (AASHTO T-85/ASTM C127 - 15), Clay Lumps and Friable Particles in Aggregate (AASHTO T-112/ASTM C142-17), and Aggregate Soundness Test (ASTM C88-13). *Id.*

The production forecasts (in Table 1) are appropriate for the LCP Project. *Id.*

The current production plan is based on extracting 100% of the total mineable reserves of 28.9 million tons in the LCP Property. This plan is efficient, and it maximizes the extraction efficiency of the LCP reserves. *Id.*

The markets, product types, demand and supply for the granite products, and the quality specifications have been adequately covered in the study. *Id.*

DCF methods, such as the NPV, are appropriate for establishing the present value of the LCP Project. *Id.*

The discount rate of 15.0% per annum for the LCP Project is appropriate for a granite project based on industry standards. *Id.*

141. These factual admissions are accurate.

142. Again consistent with FED. R. EVID. 801(d)(2), the agent designated by the IRS (as responsible for determining facts in her official IRS Examination Report) establishes this common ground *via* these FED. R. EVID. 801(d)(2) admissions by agent of party-opponent:

> The property was originally acquired by Tony D. Townley via Limited Warranty Deed from State Bank and Trust Company on June 30, 2010. *Id.* at 2.

> The Property was contributed to Log Creek LLP on December 17, 2012. *Id.*

> On November 28, 2012 Log Creek LLLP filed a Certificate of Formation as a State of Georgia Limited Liability Limited Partnership with the Georgia Secretary of State. *Id.* at 3.

> The Property is primarily wooded with planted pine trees and hardwoods. *Id.* at 2.

> In 2017, an adjoining landowner, Marin [sic] Marietta had contamination that went onto Log Creek LLLP's property that caused a lot of expense and stress. This is when Mr. Townley decided that he should start protecting the vulnerable tracks of his Property and place them into a conservation easement. *Id.* at 3.

> There were no promotors or investors in this transaction. The contribution is limited to the original owners of Log Creek, LLLP whom are husband and wife. *Id.* at 3.

The Landowner, Log Creek LLLP donated the Property to Oconee River Land Trust, Inc with a conservation easement Deed recorded in Warren County Georgia December 28, 2018.  *Id.*

The Land Trust visited the Property on February 6, 2019 for purposes of completing their annual monitoring report.  The Land Trust noted a food plot in the Riparian Buffer and advised Log Creek, LLLP to allow this area to grow back to its natural vegetative state.  *Id.* at 3-4.

RAR includes the text of the conservation purposes taken from the CE deed.  *Id.* at 4.

The Baseline mentions that the Property is ·suitable habitat for rare or endangered species.  *Id.*

The Deed identifies Significant Natural Areas (SNA)—
   o   Mesic Hardwood Forests
   o   Granite Outcrops
   o   Streams.  *Id.* at 5.

The Deed identifies Riparian Buffers and Granite Buffers.  The Riparian Buffer is 200-feet on stream and the Granite Buffer is 25-foot on the granite outcrop.  *Id.*

RAR provides a summary of the reserved rights (*Id.* at 5) and the prohibited activities (*Id.* at 6).

The baseline study was timely prepared by Elizabeth Branch from Natural Resource Consultants, LLC (Baseline).  *Id.* at 7.

The appraisal was attached to Log Creek LLP's tax return.  *Id.*

The effective date of the appraisal is December 28, 2018.  The date of the transmittal letter is February 5, 2019 and the date of inspection was November 8, 2018.  *Id.*

Both appraisers are current with their licensing with the State of Georgia and have had no disciplinary actions.  *Id.*

Both Mr. Weibel and Ms. Santangelo have completed and passed the examination of the course "Valuation of Conservation Easements" by the Appraisal Institute.  *Id.*

Log Creek, LLLP also obtained an Appraisal of Proposed Aggregate Quarry dated February 13, 2019 prepared by Jeffrey Kern and Jane Utzman of Resource Technology Corporation, PO Box 242, State College, PA 16804. This appraisal showed a FMV of $48,400,000. *Id.* at 8.

Weibel and Santangelo concluded that the highest and best use of the vacant land was the extraction of granite. *Id.*

The appraisers considered the Sales Comparison Approach and the Income Approach to determine the "Before" value. Their conclusion was to use the Income Approach. The appraisers determined that the sales data found and developed during research lacks sufficient detail to allow a reliable and credible estimate of value by the Sales comparison Approach and would be excluded in the analysis of the Property before the conservation easement. *Id.*

The Income Approach relied on conversations with public and private sector mining participants, reliable third-party data services and research on various web sites. *Id.*

The Proposed Aggregate Quarry Appraisal concluded that the mining depth would be 150' below the top of the bedrock with a total projected mineable reserve of 28,900,000 tons by year 15. *Id.* at 9.

Log Creek LLLP filed a valid extension and the F1065 was timely filed on September 16, 2019. *Id.*

Log Creek LLLP elected out of BBA on its 2018 return. *Id.*

Mr. Weibel, Ms. Santangelo signed the F8283 on 05/08/2019. *Id.* at 10.

Steffney Thompson signed the F8283 on 05/09/2019. *Id.*

The appraisal was attached to the return. *Id.*

143.   These factual admissions by the designated IRS agent are accurate.

<u>Proper Reporting of the Congressionally-Encouraged Contributions</u>

144.   The Townleys' 2018 Form 1040X attaches these five documents:  the Conservation Deed, the initial Baseline Documentation Report prepared by an wildlife biologist, the Appraisal and underlying geological data prepared by an experienced and qualified appraiser and a geologist, the "Letter of Acknowledgement" from the Oconee River LT, and the Form 8283 Appraisal Summary included as part of the 2018 returns.

145.   The Townleys' 2019 Form 1040X attaches these five documents for each of the Conservation Contributions:  the Conservation Deed, the initial Baseline Documentation Report prepared by an wildlife biologist, the Appraisal and underlying geological data prepared by an experienced and qualified appraiser and a geologist, the "Letter of Acknowledgement" from the Oconee River LT, and the Form 8283 Appraisal Summary included as part of the 2019 returns.

146.   The Townleys' 2020 Form 1040X attaches these five documents for each of the 2018 and 2019 Conservation Contributions:  the Conservation Deed, the initial Baseline Documentation Report prepared by an wildlife biologist, the Appraisal and underlying geological data, prepared by an experienced and qualified appraiser and a geologist, the "Letter of Acknowledgement" from the Oconee River LT, and the Form 8283 Appraisal Summary included as part of the 2020 returns.

## IV.   <u>COUNT I – 2018 SUIT FOR REFUND</u>

147.   The Townleys incorporate by reference the facts (and mixed matters of fact and law) previously described in ¶¶ 1 through 144, as well as Exhibits A and B.

<u>Original 2018 Filings</u>

148.   Log Creek timely filed its U.S Return of Partnership Income: Form 1065 ("Original 2018 Form 1065") for the tax year ending December 31, 2018 under extension on September 16, 2019.

149.   The Original 2018 Form 1065 properly reported the 2018 Warren County Conservation Contribution on the 240-acre Norris-Cason Tract.

150.   The Townleys timely filed their U.S. Individual Income Tax Return: Form 1040 ("Original 2018 Form 1040") for the tax year ending December 31, 2018 under extension on October 15, 2019.

151.   The Original 2018 Form 1040 properly reported the 2018 Warren County Conservation Contribution on the 240-acre Norris-Cason Tract.

<u>First Amended 2018 Filings</u>

152.   Given the IRS hostility to Congressionally-encouraged conservation, the Townleys amended their Original 2018 Form 1040 by filing a First Amended 2018 U.S. Individual Income Tax Return:  ("First Amended 2018 Form 1040X) on September 9, 2020 and engaged a second set of experts to confirm the treatment.

153.   The First Amended 2018 Form 1040X removed the Warren County Conservation Contribution from the return.

154.   The First Amended 2018 Form 1040X included an explanation that informed Defendant that "the company is obtaining further guidance [related to the 2018 Warren County Conservation Contribution] and will take whatever action that guidance indicates."

155.   On September 10, 2020, the Townleys paid the full amount of resulting taxes (plus interest).

156.   As part of the same effort, the Townleys amended their Original 2018 Form 1065 by filing a First Amended 2018 U.S. Partnership Income Tax Return: Form 1065X ("First Amended 2018 Form 1065X) on September 9, 2020.

157.   The First Amended 2018 Form 1065X removed the 2018 Warren County Conservation Contribution from the return.

158.   The First Amended 2018 Form 1065X included an explanation of the amendment that informed Defendant that "the company is obtaining further guidance [related to the 2018 Warren County Conservation Contribution] and will take whatever action that guidance indicates."

Final Amended 2018 Filings and Claim for Refund

159.  On April 23, 2022, Log Creek filed a Second Amended U.S. Partnership Income Tax Return ("Second Amended 2018 Form 1065X") for the taxable year ending December 31, 2018 after completing its efforts to confirm the proper treatment of the 2018 Warren County Conservation Contribution.

160.  The Second Amended 2018 Form 1065X accurately reported the 2018 Warren County Conservation Contribution.

161.  The Second Amended 2018 Form 1065X included an explanation for the amendment.

162.  The Townleys then filed a Second Amended 2018 U.S. Individual Income Tax Return ("Second Amended 2018 Form 1040X") for the taxable year ended December 31, 2018 on or before April 26, 2022.

163.  The Second Amended 2018 Form 1040X accurately reported the 2018 Warren County Conservation Contribution.

164.  The Second Amended 2018 Form 1040X included an explanation for the amendment.

165.  The Second Amended 2018 Form 1040X claimed a refund for taxes paid on September 10, 2020.

166.   On the Original, First, and Second Amended 2018 U.S Returns of Partnership Income: Forms 1065, Log Creek elected out of treatment under the Bipartisan Budget Act of 2015 ("BBA") pursuant to 26 U.S.C. § 6221(b)(1).

167.   The Townleys satisfied the jurisdictional prerequisites of 26 U.S.C. § 6511(a) and 26 U.S.C. § 7422(a) by timely filing a Form 1040X for the tax year ending December 31, 2018 on or before April 26, 2022.

168.   The Townleys complied with 26 U.S.C. § 6511(a) by timely filing their Form 1040X, claim for refund.

169.   The IRS has not denied the Second Amended 2018 Form 1040X.

170.   The Townleys satisfy the requirements of 26 U.S.C. § 6532(a)(1) by filing this suit more than six months after the filing of their claim for refund on April 26, 2022.

171.   The Townleys are entitled to recover overpaid federal income taxes in the amount of $6,757,047 (or such greater amount determined by the Court or jury) for the tax year ending December 31, 2018 (plus interest as provided by law).

## V.  COUNT II – 2019 SUIT FOR REFUND

172.   The Townleys incorporate by reference the facts (mixed matters of fact and law) previously described in ¶¶ 1 through 171, as well as Exhibits C and D.

2019 Conservation Contributions

173.   As noted, the Townleys, through Log Creek, contributed three tracts in perpetuity to Oconee River LT in 2019.

174.   On December 30, 2019, Log Creek executed a Conservation Deed that conveyed a real property interest in the 156.67 acre Wheeler Tract to Oconee River LT.  Unbeknownst to the Townleys, the local government protected that land against development in June 2019 and so, no deduction has been reported.

175.   That Deed was recorded on December 30, 2019 in Warren County.

176.   On December 30, 2019, Log Creek executed a Conservation Deed that conveyed a real property interest in the 280.78 acre Heard Road Tract to Oconee River LT.  That Deed was recorded on December 30, 2019 in Wilkes County.

177.   On December 30, 2019, Log Creek executed a Conservation Deed that conveyed a real property interest in the 272.98-acre Brown Harris Tract to Oconee River LT.  That Deed was recorded on December 31, 2019 in Taliaferro County.

Original 2019 Filings

178.   Log Creek timely filed its U.S Return of Partnership Income: Form 1065 ("Original 2019 Form 1065") for the tax year ending December 31, 2019 on September 14, 2020.

179.   The Original 2019 Form 1065 did not claim any conservation easement deductions.

180.   The Original 2019 Form 1065 did include an Explanation disclosing that conservation contributions would be claimed on an Amended Return.

181.   The Townleys timely filed their U.S. Individual Income Tax Return: Form 1040 ("Original 2019 Form 1040") for the tax year ending December 31, 2019 on October 15, 2020.

182.   The Original 2019 Form 1040 did not claim any conservation easement deductions.

183.   The Original 2019 Form 1040 did include an Explanation disclosing that conservation contributions would be claimed on an Amended Return.

184.   On October 15, 2020, the Townleys paid the full amount of taxes without considering any of the Conservation Contributions.

Amended 2019 Filings and Claim for Refund

185.   As a result of additional compliance requirements arising at the time, Log Creek amended its Original 2019 Form 1065.

186.   On April 23, 2022, Log Creek filed an Amended 2019 U.S. Return of Partnership Income:  Form 1065X ("Amended 2019 Form 1065X").

187.   The Amended 2019 Form 1065X disclosed the 2019 Warren County Conservation Contribution on the Wheeler Tract.

188.   The Amended 2019 Form 1065X did not report a deduction for the 2019 Warren County Conservation Contribution on the Wheeler Tract.

189.   The Amended 2019 Form 1065X reported a deduction for the 2019 Wilkes County Conservation Contribution on the Heard Road Tract.

190.   The Amended 2019 Form 1065X reported a deduction for the 2019 Taliaferro County Conservation Contribution on the Brown Harris Tract.

191.   The Amended 2019 Form 1065X included an Explanation of the Amendment describing the inclusion of these three Conservation Contributions deductions.

192.   The Amended 2019 Form 1065X included adjustments to carryover contributions to account for value of the conservation contribution related to the 2018 Warren County Conservation Contribution.

193.   As a result of additional compliance requirements arising at the time, the Townleys amended their Original 2019 Form 1040.

194.   The Townleys filed an Amended 2019 U.S. Individual Income Tax Return: Form 1040X ("Amended 2019 Form 1040X") on April 26, 2022.

195.   The Amended 2019 Form 1040X disclosed the 2019 Warren County Conservation Contribution on the Wheeler Tract.

196.   The Amended 2019 Form 1040X did not claim a deduction for the 2019 Warren County Conservation Contribution on the Wheeler Tract.

197.   The Amended 2019 Form 1040X claimed a deduction for the 2019 Wilkes County Conservation Contribution on the Heard Road Tract.

198.   The Amended 2019 Form 1040X claimed a deduction for the 2019 Taliaferro County Conservation Contribution on the Brown Harris Tract.

199.   The Amended 2019 Form 1040X included an Explanation of the Amendment describing the inclusion of these three Conservation Contributions.

200.   The Amended 2019 Form 1040X included adjustments to carryover contributions to account for value of the conservation contribution related to the 2018 Warren County Conservation Contribution.

201.   On the Original 2019 Form 1065 and Amended 2019 Form 1065X, Log Creek elected out of treatment under the Bipartisan Budget Act of 2015 ("BBA") pursuant to 26 U.S.C. § 6221(b)(1).

202.   The Townleys satisfied the jurisdictional prerequisites of 26 U.S.C. § 6511(a) and 26 U.S.C. § 7422(a) by timely filing a Form 1040X for the tax year ending December 31, 2019 on April 26, 2022.

203.   The Townleys complied with 26 U.S.C. § 6511(a) by timely filing their 2019 Form 1040X, claiming a refund, within two years of the date it made the payment on October 15, 2020.

204.   The IRS has not denied the Amended 2019 Form 1040X.

205.   The Townleys satisfy the requirements of 26 U.S.C. § 6532(a)(1) by filing this suit more than six months after the filing of their claim for refund for 2019 on April 26, 2022.

206.   The Townleys are entitled to recover overpaid federal income taxes in the amount of $6,071,342 (or such greater amount determined to be accurate by the Court or jury) for the tax year ending December 31, 2019, plus interest as provided by law.

## VI.   COUNT III – 2020 SUIT FOR REFUND

207.   The Townleys incorporate by reference the facts (and mixed matters of fact and law) described at ¶¶ 1 through 206, as well as Exhibits A through E.

Original 2020 Filings

208.   The Townleys formed Log Creek on November 28, 2012.

209.   During the tax year ended December 31, 2020, Elizabeth and Tony each owned 50 percent of Log Creek.

210.   Log Creek timely filed its U.S Return of Partnership Income: Form 1065 ("2020 Form 1065") for the tax year ending December 31, 2020 on September 15, 2021.

211.   The Townleys timely filed their U.S. Individual Income Tax Return: Form 1040 ("Original 2020 Form 1040") for the tax year ending December 31, 2020 on October 15, 2021.

212.   The Original 2020 Form 1040 did not report any conservation easement deductions directly, or through Carryover Contributions pending the Townleys making doubly sure they and their advisors handled the 2018 and 2019 Conservation Contributions properly.

213.   On October 15, 2021, the Townleys paid the full amount of taxes without utilizing any of the carryover Conservation Contributions.

Amended 2020 Filing and Claim for Refund

214.   The Townleys filed an Amended 2020 U.S. Individual Income Tax Return: Form 1040X ("Amended 2020 Form 1040X") no later than April 26, 2022.

215.   The Amended 2020 Form 1040X reports a carryover contribution deduction from the 2018 Warren County Contribution on the Norris-Cason Tract.

216.   The Amended 2020 Form 1040X reports no carryover or deduction for the 2019 Warren County Conservation Contribution on the Wheeler Tract.

217.   The Amended 2020 Form 1040X reports a carryover contribution deduction for the 2019 Wilkes County Contribution on the Heard Road Tract.

218.   The Amended 2020 Form 1040X reports a carryover contribution deduction for the 2019 Taliaferro County Contribution on the Brown Harris Tract.

219.   The Amended 2020 Form 1040X included an Explanation of the Amendment describing the inclusion of these four Conservation Contributions.

220.   The Amended 2020 Form 1040X included adjustments to carryover contributions to account for value of the conservation contributions related to the 2018 Warren County Conservation Contribution and the 2019 Warren County, Wilkes County, and Taliaferro County Conservation Contributions.

221.   On the Original 2020 Form 1065, Log Creek elected out of treatment under the Bipartisan Budget Act of 2015 ("BBA") pursuant to 26 U.S.C. § 6221(b)(1).

222.   The Townleys satisfied the jurisdictional prerequisites of 26 U.S.C. § 6511(a) and 26 U.S.C. § 7422(a) by timely filing a Form 1040X for the tax year ending December 31, 2020 no later than April 26, 2022.

223.   The Townleys complied with 26 U.S.C. § 6511(a) by timely filing their 2020 Form 1040X, claiming a refund, within two years of the date it made the payment on October 14, 2021.

224.   The IRS has not denied the Amended 2020 Form 1040X.

225.   The Townleys satisfy the requirements of 26 U.S.C. § 6532(a)(1) by filing this suit more than six months after the filing of their claim for refund for 2020 on or before April 26, 2022.

226.   The Townleys are entitled to recover federal income taxes in the amount of $30,469,924 (or such greater amount determined by the Court or jury) for 2020, plus interest as provided by law.

## VII.   <u>BURDEN OF PROOF</u>

227.   The IRS bears the burden of proof as to all matters relating to the refund of taxes arising from the 2018 conservation contribution due to 26 U.S.C. § 7491 and the arbitrary, unreasonable, excessive, and erroneous IRS determination.

228.   The Townleys bear the burden of proof as to all matters relating to the refund of taxes arising from the 2019 conservation contributions.

## VIII.   PRAYER FOR RELIEF

The Townleys respectfully request that this Court order a refund of the overpaid income taxes in the amounts of $6,757,047 for 2018, $6,071,342 for 2019, and $30,469,924 for 2020 (or such greater amounts as the Court or jury determines to be accurate), plus interest as provided by law.

## IX.   DEMAND FOR JURY TRIAL

Plaintiffs respectfully request a jury trial on all issues triable by jury.

Respectfully submitted,

Dated:  October 27, 2022 /s/David D. Aughtry
DAVID D. AUGHTRY
Tax Court Bar No. AD0165

Dated:  October 27, 2022 /s/Jasen D. Hanson
JASEN D. HANSON
Tax Court Bar No. HJ1646

CHAMBERLAIN, HRDLICKA,
 WHITE, WILLIAMS & AUGHTRY
191 Peachtree Street, N.E.
Forty-Sixth Floor
Atlanta, Georgia 30303
Telephone:  (404) 659-1410
Facsimile:  (404) 659-1852
david.aughtry@chamberlainlaw.com
jasen.hanson@chamberlainlaw.com

COUNSEL FOR PLAINTIFFS

30171512