```
            IN THE UNITED STATES DISTRICT COURT
           FOR THE MIDDLE DISTRICT OF GEORGIA
                      ATHENS DIVISION

TONY D. TOWNLEY and ELIZABETH    *
A. TOWNLEY,
                                 *
     Plaintiffs,
                                 *
vs.                                    CASE NO. 3:22-cv-107 (CDL)
                                 *
UNITED STATES OF AMERICA,
                                 *
     Defendant.
                                 *
```

O R D E R

Presently pending before the Court are the IRS's motions to exclude the expert testimony of Douglas Kenny (ECF No. 123), Chris Summers (ECF No. 124), and Richard Capps (ECF No. 125). As explained in this Order, those motions are denied.

BACKGROUND

IRS counsel's briefing throughout this litigation, including the briefing on the pending motions to exclude the Townleys' three valuation experts, has a consistent theme and disdainful tone: the Townleys' greedy attempt to value their charitable conservation easements based upon land values that are thousands of times more than any other "comparable" timber land can only be supported by the crafty practices of clever lawyers, shady accountants, and crooked appraisers. Healthy skepticism is a necessary trait possessed by all good lawyers. Cynicism, however,

can sometimes cloud objective judgment.  Here, it has led to a tendency to equate apples (timberland) with oranges (mining land).

The Townleys have certainly not concealed their belief that their property has commercial value beyond the value of its pine trees or hunting rights.  The fact that they and their neighbors may have originally purchased their property for prices based upon the value of timberland does not forever establish the fair market value of that property.  Circumstances change.  And here the Townleys' research and investigation have revealed that their property contains valuable mineral deposits in the nature of granite that can be mined and sold as crushed stone.  They are not speculating about the presence of such deposits but have hired well-qualified and experienced persons to investigate the presence and extent of the deposits as well as the feasibility of extracting the stone for commercial use.  They have also had persons with special expertise in such mining to evaluate the value of these mineral deposits.  Suggesting that 1,000 acres of timberland with no such mineral deposits should be valued the same as 1,000 acres with marketable mineral deposits cannot be done with a straight face.  Only the most stubborn devil's advocate would argue that property with gold or diamonds beneath the surface has value comparable to the property next door that has nothing but red Georgia clay beneath the topsoil, no matter how fertile that topsoil may be.  This of course seems silly, but sometimes zealous

advocacy leads to Alice's Wonderland. It is not surprising or suspicious that one piece of property (with valuable mineral deposits) has a value many times more than another property (without such deposits), even if the two properties appear identical on the surface. It's common sense.

The value placed on this property by the Townleys' experts certainly grabs the attention of the layperson unfamiliar with mining and the commercial value of minerals. But personal astonishment by the layperson or lawyer is not a reliable standard for evaluating the reasonableness of such valuations. Arguably, it justifies why our rules permit persons with special expertise to help explain to juries why their initial astonishment should not necessarily lead them to premature conclusions.

The point is that evidence exists that the Townleys' property has granite beneath it; that the granite is extractable, and that it adds value to the property. There is of course evidence to the contrary. And that's primarily what this fight should be about.

Whether the property here has such mineral deposits, whether they are feasibly extractable, and the extent to which they increase the value of the property are of course all issues upon which reasonable persons may disagree. And in litigation, when a jury has to resolve these issues, it would certainly be helpful for them to be provided with evidence from well-qualified experts who can provide relevant information based on the reasonable

3

application of reliable methodologies.  A party's disagreement with those opinions and even weaknesses in them, which can certainly be highlighted through cross examination of an opponent's experts and direct examination of one's own expert, does not make them inadmissible; such perceived weaknesses instead go to the weight that the jury may give the evidence.  Each of the IRS's motions to exclude fails to fully grasp this distinction between admissibility and weight.

## DISCUSSION

The Court understands that it must act as the Rule 702 gatekeeper.  And that the proponent of the expert testimony has the burden of "*demonstrat[ing] to the court that it is more likely than not* that:" (a) the expert's "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;" (b) the "testimony is based on sufficient facts or data;" (c) the "testimony is the product of reliable principles and methods;" and (d) "the expert's opinion reflects a reliable application of the principles and methods to the facts of the case."  Fed. R. Evid. 702(a)–(d) (emphasis added to show clarification made by the recent amendments to the Rule).  The Court must make these initial determinations; they cannot be punted to the jury for its resolution.  But this gatekeeping role "is not intended to supplant the adversary system or the role of the jury: vigorous cross-examination, presentation

4

of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *United States v. Ala. Power Co.*, 730 F.3d 1278, 1282 (11th Cir. 2013) (internal quotation marks omitted) (quoting *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1311 (11th Cir. 1999)). Rule 702 creates a gate, not an impenetrable wall.

The Court finds that the Townleys have carried their burden regarding the expert testimony of Douglas Kenny, Chris Summers, and Richard Capps. The Court explains why in the remainder of this Order.

## I.  Chris Summers

Summers is the Chief Executive Officer of Burgex Mining Consultants, Inc. He has a Bachelor of Science in Accounting and a Master of Business Administration. He has taken courses on mineral economics from the Colorado School of Mines. He has substantial experience as a business analyst performing net present valuations of proposed mines, for both greenfield sites and active quarries for various purposes, including acquisitions. As part of his professional work, he regularly relies on market-based supply and demand curves, estimates of supply and demand using publicly available information, and performance evaluation using a free cash flow net present value calculation. The Court finds, and the IRS does not seem to contest, that Summers is qualified by his knowledge, training, skill, experience, and

5

education to analyze the relevant construction aggregate market and perform net present value analysis of the mineral deposits in the proposed quarries that are the subject of his opinions. The Court further finds that his special expertise will help the jury understand the feasibility of mining the granite on the Townleys' property and the value that the granite adds to the property.

In arriving at his opinions as to feasibility and value, Summers used the same standard methodologies that are used in the mining valuation industry. And he applied those methodologies to the specific circumstances that exist regarding the Townleys' property. The Court finds that Summers's opinions are based on sufficient facts and data and reflect a reliable application of these methodologies and principles to the facts in this case. The Townleys have carried their burden of satisfying the requirements of Rule 702. The IRS's criticism of Summers's opinions can be fully explored through cross examination and testimony from the IRS's expert. The jury as factfinder must ultimately determine the weight to be given to the opinions.

## II.  Dr. Richard Capps

Capps has a Bachelor's and a Master's degree in geology, as well as a PhD in economic geology. He has also taken numerous continuing education courses in mineral exploration and development over the last 50 years. He is a member of the Society of Economic Geologists and the Society for Mining, Metallurgy, and

6

Exploration and has been actively engaged in the geology profession for 50 years. His extensive experience has included identifying and acquiring undeveloped mineral properties. He has also taught geology at the university level as an associate professor and acted as a field and exploration geologist. In his current role, he manages a company that provides a variety of services to participants in the mining and mineral acquisition industries, including project generation, planning, management services, project valuation services, compliance reporting, geological mapping, geochemical sampling, exploration and production drilling supervision, water quality and environmental studies, geostatistical evaluation and interpretation, and mineral inventory estimation. As the principal geologist for his present employer, he is intimately familiar with services that require an expertise in minerals, minerals exploration, and mineral market analysis. It is clear to the Court (and quite frankly should be beyond dispute) that Capps's experience, knowledge, training, education, and skill qualify him to provide opinion testimony on issues related to (1) an evaluation of the market for a potential granite aggregate mine on the subject property; (2) consideration of the scientific and technical data related to the property; and (3) conclusions as to the value of the mineral resources and reserves on the property.

It is also clear to the Court that Capps's testimony will be helpful to the jury in understanding these issues, that his testimony is based on sufficient facts and data, that his testimony is the product of reliable principles and methods, and that his opinions reflect a reliable application of these principles and methods to the facts of this case.  Accordingly, the Townleys have carried their burden for clearing the Rule 702 gate.  Of course, the jury does not have to accept Capps's opinions, and IRS counsel will have a full opportunity to discredit those opinions.  But it would be error for the Court to prevent the jury from considering them and giving them the weight the jury deems them to deserve.

**III. Douglas Kenny**

Kenny prepared appraisals for the subject properties.  He graduated from Georgia Tech with a degree in industrial engineering.  He has been designated as a Member of the Appraisal Institute, having successfully completed the examination, experience, and demonstration report requirements.  He is also a Georgia Certified General Real Estate Appraiser, which likewise required the satisfaction of certain examination and experience requirements.  He has substantial real estate appraisal experience involving a broad range of properties and specializing in mineral properties and conservation easements.  He has studied best practices for real estate appraisals, including taking specialized courses on conservation easements and mineral properties.

8

Although he is also an industrial engineer, he relies in part upon the analyses of qualified geologists and/or mining engineers when valuing properties with mineral deposits. And he opines that other appraisers in this field would likewise partly rely upon such analyses when doing an appraisal of properties containing valuable mineral deposits. The Court finds Kenny qualified based on his experience, education, training, knowledge, and skill to provide opinion testimony on issues related to the appraisal of properties with mineral deposits, including the subject properties in this action.

The Court further finds that Kenny followed the general appraisal standards and principles that are well accepted in the industry, including the Uniform Standards of Professional Appraisal Practice; that these principles and methods are reliable; that his opinions reflect a reliable application of these principles and methods to the facts of this case; that the opinions are based upon sufficient facts and data; and that his testimony would be helpful to the jury in understanding the issues related to the appraisal of the subject properties.

The IRS's criticism of Kenny's testimony as simply parroting the opinions of Capps and Summers misunderstands the full nature of Kenny's testimony. He acknowledges that he relies upon their opinions as it relates to their specialized knowledge of mineral geology, mine development feasibility, and mineral valuation. But

9

he explains how this information informs his opinions as a real estate appraiser. Based upon that information, as well as his own investigation and research, he reached his own opinions about the highest and best use of the property, the different valuation approaches, valuation methods, discounted cash flow components, and ultimate value. And he explained how he arrived at these conclusions using well accepted appraisal principles. Contrary to IRS counsel's suggestion, he did not simply opine that "you should accept my opinions because I am the expert and I say you should." Such *ipse dixit* analysis would not be admissible. But that simplistic label mischaracterizes Kenny's opinions. Based on the foregoing, the Court concludes that Kenny likewise clears the Rule 702 gate.[1]

## CONCLUSION

The IRS's motions to exclude the testimony of Kenny (ECF No. 123), Summers (ECF No. 124), and Capps (ECF No. 125) are denied.

---

[1] The Court understands Kenny to have taken the opinions of Capps and Summers, along with his own knowledge and experience, and developed an evaluation of what the granite on the Townleys' property could generate financially, and then, based on appraisal principles, determined what a willing buyer would pay for a property with the capability to generate such returns and what a willing seller would take for such property. He is not simply providing an opinion as to the profits that the Townleys lost by not being able to develop the property. This distinction may admittedly be a subtle one, and IRS's counsel will be able to attempt to blur it through cross examination and testimony from its own expert. But Kenny's explanation of the distinction will be helpful to the jury in its task of trying to evaluate the value of the easements.

IT IS SO ORDERED, this 22nd day of March, 2024.

                                        S/Clay D. Land
                                        CLAY D. LAND
                                        U.S. DISTRICT COURT JUDGE
                                        MIDDLE DISTRICT OF GEORGIA