IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

TONY D. TOWNLEY and ELIZABETH      *
A. TOWNLEY,
                                   *
      Plaintiffs,
                                   *
vs.                                          CASE NO. 3:22-cv-107 (CDL)
                                   *
UNITED STATES OF AMERICA,
                                   *
      Defendant.
                                   *
_____
                                   *

O R D E R

This tax refund action arises from Plaintiffs Tony and Elizabeth Townleys' granting of three conservation easements to Oconee River Land Trust, Inc.  The Townleys contend that these grants constitute charitable contributions under the Internal Revenue Code, entitling them to deductions from their taxable income for the tax years 2018, 2019, and 2020.  The essence of the dispute with the IRS relates to the value of the easements and thus the amount of the deductions.  The Townleys valued the easements based on the highest and best use of their property being for granite mining.  The IRS maintains the easements should be valued based on comparable sales of timberland.

The Townleys claimed the first deduction in their original 2018 tax filings, but later amended those filings to not claim the deduction in response to an IRS audit.  The Townleys did not claim deductions in their original 2019 and 2020 tax filings but included

with those filings an explanation disclosing their intention to claim charitable contribution deductions in an amended return. After paying the amount of taxes that would have been due had they not taken the deductions, the Townleys filed amended returns for tax years 2018, 2019, and 2020 claiming the deductions and seeking a refund. When the IRS did not act within six months of the filing of those amended returns, the Townleys filed the present action claiming that they are entitled to $43,298,313 plus interest in refunds for tax years 2018, 2019, and 2020.[1]

The IRS denies that the Townleys are entitled to a tax refund for any of those taxable years. It also asserts a counterclaim seeking a 20% penalty of no less than $8,659,662.60 based on its contention that the Townleys' refund claims were excessive and without reasonable cause. The IRS argues first that the Townleys failed to meet certain threshold requirements for the deductions, including the following: (1) a "qualified appraisal" supporting the deductions; (2) the establishment of a "baseline" for the condition of the property covered by the conservation easement; and (3) a statutorily recognized conservation purpose that would not be impaired by the reservation of any rights by the Townleys to use the property related to the easements in a manner that is

---

[1] Plaintiffs sued the United States by and through its agent, The Internal Revenue Commissioner. In this order, the Court refers to the Defendant simply as the IRS.

inconsistent with the conservation purpose. Even if these threshold requirements have been met, the IRS maintains that the Townleys have not established that mining is the highest and best use for their property. Therefore, according to the IRS, the "income method" for valuing the easements is not appropriate and results in excessive unwarranted deductions.

Taking full advantage of Rule 56 of the Federal Rules of Civil Procedure, the parties have filed a combined total of nine motions for summary judgment that ask the Court to decide these issues as a matter of law. The following motions are pending regarding the threshold requirements: (1) the IRS's Motion for Partial Summary Judgment as to the Townleys' Failure to Meet Threshold Legal Requirements for Conservation Easement Deductions (ECF No. 86); (2) the Townleys' Amended Motion for Partial Summary Judgment Regarding "Qualified Appraisal" (ECF No. 65); (3) the Townleys' Motion for Partial Summary Judgment Regarding Baseline Documentation (ECF No. 60); (4) the Townleys' Motion for Partial Summary Judgment Regarding Conservation Purpose (ECF No. 61); and (5) the Townleys' Motion for Partial Summary Judgment Regarding Prohibition of Inconsistent Uses (ECF No. 63). The following motions are pending regarding the valuation issues: (1) the IRS's Motion for Partial Summary Judgment as to Valuation (ECF No. 84); (2) the IRS's Motion for Partial Summary Judgment Regarding the Highest and Best Use of the Taliaferro County Property (ECF No.

85); (3) the Townleys' Motion for Partial Summary Judgment Regarding Forest Land Preservation Covenants (ECF No. 62); and (4) the Townleys' Motion For Judicial Notice Regarding Appraisal Standards (ECF No. 110).[2]

For the reasons explained in the following discussion, the Court finds as follows: (1) the present record establishes as a matter of law that the Townleys have met the threshold requirements related to the "qualified appraisal" requirement and "baseline documentation," and thus the Townleys' motions for partial summary judgment docketed at ECF Nos. 65 and 60 are granted and the IRS's motion docketed at ECF No. 86 is denied; (2) although the Court finds that the easements were conveyed for statutorily authorized conservation purposes, genuine factual disputes exist as to whether the Townleys' reservation of the right to conduct timber operations on the property will lead to the destruction of other significant conservation interests to the extent that the reserved use disqualifies the easements, and thus the Court grants the Townleys' motion for partial summary judgment docketed at ECF No. 61 and denies the Townleys' motion at ECF No. 63; and (3) the present record does not establish as a matter of law that the

---

[2] The IRS also filed three motions to exclude testimony from three of the Townleys' experts: (1) Motion to Exclude Expert Testimony of Douglas Kenny (ECF No. 123); (2) Motion to Exclude Expert Testimony of Chris Summers (ECF No. 124); and (3) Motion to Exclude Expert Testimony of Richard Capps (ECF No. 125). The Court recently denied these motions in a separate written order (ECF No. 135).

Townleys' valuation method is sufficiently flawed to the extent that it cannot be considered by the factfinder, and genuine factual disputes otherwise exist as to the valuation of the conservation easements; thus, the IRS's motions for partial summary judgment docketed at ECF Nos. 84 and 85 and the Townleys' motion for partial summary judgment docketed at ECF No. 62 are denied.  The Court defers ruling on the Townleys' Motion for Judicial Notice Regarding Appraisal Standards (ECF No. 110), but observes that even if the Court ultimately declines to take judicial notice of these standards, the Townleys should be able to make the jury aware of these standards through expert testimony and/or cross examination of the IRS's witnesses.

## SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  A fact is *material* if it is relevant or necessary to the outcome of the suit.  *Id.* at 248.  A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for

the nonmoving party. *Id.* While the Court should avoid advisory opinions, it may order that certain material facts are not genuinely disputed and thus are established in the case, even if the Court does not grant all the relief requested by the motion for summary judgment. Fed. R. Civ. P. 56(g).

DISCUSSION

The Court divides its discussion as follows. It first addresses the threshold requirements, including the "qualified appraisal" requirement, the "baseline documentation" requirement, the legitimate conservation purposes of the easements, and whether the uses reserved by the Townleys are inconsistent with legitimate conservation purposes. The Court next turns to the easement valuation issues, including the proper valuation methodology, whether mining can be considered as the highest and best use of the property in light of land use and zoning restrictions as well as evidence of market demand for stone aggregate, and the effect of the existing Forest Land Preservation Covenants on valuation. Before turning to these substantive issues, the Court finds it appropriate to make a few observations as background for its discussion.

The people of the United States through their elected representatives in Congress have determined that it is in the public interest to encourage private landowners to restrict the use and development of their property in order to preserve our

natural resources for legitimate conservation purposes. Thus, using the Internal Revenue Code, Congress provided an opportunity for landowners to take a charitable contribution deduction in determining their taxable income equal to the value of a qualified conservation easement that restricts the use of their property for designated conservation purposes. To obtain the deduction, the conservation easement must meet certain regulatory requirements.

From the heated rhetoric flowing from some of the briefing in this case, it is evident that the IRS and its counsel passionately believe that this worthy conservation scheme has been abused by greedy taxpayers assisted by clever lawyers, crafty accountants, and over-zealous appraisers. That rhetoric, some of which rises to the level of hyperbole, is not particularly helpful in focusing on the precise legal issues to be decided in the present case. Quite frankly, when legitimate skepticism evolves into generalized cynicism, such an attitude is typically counterproductive to assisting the Court to objectively evaluate legal requirements on a case-by-case basis. While Congress certainly expected that these types of deductions would be closely scrutinized, it did not intend for the IRS to create "gotcha traps" to ensnare taxpayers who seek the deductions in good faith. An enforcement attitude tempered by an expectation of *substantial* compliance should prevent abuse while accomplishing the worthy public purpose of conservation easements. In this order, the Court intends to focus on the legal

requirements and not some global accusation that landowners seeking these tax breaks must be treated with great suspicion and are not entitled to any benefit of the doubt.[3]

## I.    The Threshold Requirements

### A.    Legitimate Conservation Purpose and Inconsistent Reserved Uses

The Internal Revenue Code allows a federal income tax deduction for a "qualified conservation contribution." I.R.C. § 170(h). To qualify as a "qualified conservation contribution," a taxpayer must make a contribution of a "qualified real property interest" to a "qualified organization" and that contribution must be made "exclusively for conservation purposes." *Id.* § 170(h)(1). The parties do not dispute that all three easements were "qualified real property interests" and that they were contributed to a "qualified organization."[4] The lone disputed issue is whether the Townleys' contributions were made "exclusively for conservation purposes." "Conservation purpose" includes the preservation of open space, including farmland and forest land, if the preservation is "pursuant to a clearly delineated Federal, State, or local governmental conservation policy" and "will yield a significant

---

[3] The Court hastens to add that it fully understands the IRS's duty to enforce the Tax Code and accompanying regulations. But it likewise has a responsibility to treat each taxpayer individually and not as part of some imagined grand conspiracy which has as its purpose theft from the United States Treasury using fabricated transactions.

[4] The Townleys moved for partial summary judgment (ECF No. 58) on these two elements. The IRS did not oppose that motion. Accordingly, the partial summary judgment motion on this issue is granted.

public benefit." *Id.* § 170(h)(4)(A)(iii). For the use to be deemed "exclusively" for conservation purposes, the grantor cannot reserve the right to conduct certain activities on the property that will lead to the destruction of other significant conservation purposes.

### 1. Did the Townleys Make Their Contributions for Authorized Conservation Purposes?

Preliminarily, it is clear that the easements here had as their purpose the preservation of open space, including farmland and forest land. They also preserved certain wetland areas on the subject property. But to meet this conservation purpose element, the contributions must have also been made pursuant to a clearly delineated governmental policy and they must yield a significant public benefit. The "clearly delineated" governmental policy requirement is met by donations that "further a specific, identified conservation project." Treas. Reg. § 1.170A-14(d)(4)(iii)(A). Although the government program need not be funded to satisfy this paragraph, the program must involve a "significant commitment by the government with respect to the conservation project." *Id.* Preferential tax treatment for "property deemed worthy of protection for conservation purposes" constitutes a "significant commitment" by the government. *Id.*

The Townleys argue that the Georgia Forest Land Protection Act ("FLPA") provides a clearly delineated governmental policy

supporting the easements.  The FLPA is a Georgia state law passed
to encourage forest conservation and its associated environmental
benefits by providing an ad valorem tax exemption to landowners
whose property is primarily used for the good faith subsistence or
commercial production of trees, timber, and other wood products.
In exchange for entering into a covenant restricting certain uses
of the land under the FLPA—called a Forest Land Conservation Use
Assessment Covenant ("FLCUAC")—with the local county board of tax
assessors, owners of land deemed worthy of FLPA protection can
receive preferential property tax treatment.  O.C.G.A. § 48-5-
7.7(d).  Here, no party disputes that each property was at some
point subject to a FLCUAC and thus that each county certified the
Townleys' land for preservation as forest land.  *Id.* § 48-5-7.7(j)
("Applications for forest land conservation use assessment . . .
shall be filed with the county board of tax assessors . . . who
shall approve or deny the application.").  Rather than continue
the relatively temporary protection of their forest land through
the FLCUACs, the Townleys opted to preserve the land in perpetuity
through conservation easements.  They accordingly donated the
easements to Oconee River Land Trust to preserve the forest land
by barring mining and other forms of development.  The Court thus
finds that the Townleys donated the easements pursuant to the FLPA—
a "clearly delineated governmental policy."  The Court further
finds that the conservation easements will yield a significant

public benefit consistent with Georgia's delineated governmental policy by preserving the forest land and protecting it from development pressures, such as mining. *See* Treas. Reg. § 1.170A-14(f) (example 5). The Townleys' motion for partial summary judgment "regarding conservation purpose" (ECF No. 61) is granted.

> 2.    *Is the Restrictive Easement Language Dispositive of Whether Inconsistent Uses Have Been Reserved?*

The Townleys have reserved the right to continue to conduct some timber operations on and/or near the subject property, but the conservation easements prohibit them from engaging in any activity that would be inconsistent with the conservation purposes sought to be protected by the easements. The IRS takes the position that the reserved timbering activities violate Treasury Regulation § 1.170A-14(e)(2), the inconsistent use regulation, notwithstanding the restrictions in the easements. The Townleys maintain that the restrictive language in the easements, which provide the donee of the easements with an enforcement mechanism, eliminates the IRS's concern, and to the extent that the regulations are inconsistent with the applicable statute, I.R.C. § 170(h)(4), the regulations must yield. The Court addresses each argument in turn.

The easements here do not require the Townleys to cease using the subject property. They conveyed easements, not a fee interest, to the Oconee River Land Trust, Inc. But those easements do

preclude the Townleys from engaging in any activity that is inconsistent with the conservation purposes of the easements. This restriction is designed to comply with the applicable tax deduction requirements. A landowner should not be able to get a tax deduction for agreeing to restrict the use of his property for a designated conservation purpose and then reserve the right to conduct activities on the property that would be sufficiently inconsistent with that purpose that it impairs it. The Townleys argue that this restriction in the easements that can be enforced by the Oconee River Land Trust establishes as a matter of law that the regulations regarding inconsistent use do not apply because the Court must assume that the Townleys will comply with the restrictions in the easement, *i.e.*, that there shall be no prohibited inconsistent use. This simplistic argument ignores reality, and the Court finds that the easement restriction standing alone does not end the inquiry. While the restriction is certainly relevant to the inquiry, it is not dispositive.

The Court finds that a determination must be made as to whether the reserved activities are in fact inconsistent with the conservation purposes of the easement such that the property is not being used exclusively for such approved purposes. Here, the IRS pointed to evidence from its expert, Michael Chamberlain, that the Townleys were not exercising their reserved rights in a manner consistent with the conservation purposes of the deed. Def.'s

Resp. to Pls.' Mot. Partial Summ. J. Ex. 2, Chamberlain Expert Report 15-16, ECF No. 92-2. Specifically, Chamberlain opined that timber harvesting activities were interfering with special natural areas and riparian buffers meant to protect water quality. *Id.* at 16. The Court finds that genuine factual disputes exist on this issue, and therefore, the Townleys' motion for partial summary judgment regarding prohibition of inconsistent uses (ECF No. 63) is denied on this ground. The jury must determine whether the Townleys' timbering activities are sufficiently inconsistent with the conservation purposes the conservation easements are designed to protect such that they do not qualify for the tax deductions.

   3.   *Is Treasury Regulation § 1.170A-14(e)(2) Invalid Under § 170(h)(4)?*

Treasury Regulation § 1.170A-14(e)(2), sometimes referred to as "the inconsistent use regulation," disallows deductions for charitable conservation contributions if the "contribution would accomplish one of the enumerated conservation purposes but would permit destruction of other significant conservation interests." The IRS takes the position that by reserving the right to conduct timber harvesting on the subject property, the Townleys may potentially destroy other significant conservation interests such as the impairment of the quality of wetlands and streams. The Townleys respond that this interpretation is inconsistent with the restrictive language in the easements and the unambiguous language

in the applicable statute, § 170(h)(4). The Court addressed the easement restriction issue in the previous discussion. The Court now addresses the statutory conflict issue.

The applicable statute, Section 170(h)(4), provides:

For purposes of this subsection, the term "conservation purpose" means--

**(i)** the preservation of land areas for outdoor recreation by, or the education of, the general public,

**(ii)** the protection of a relatively natural habitat of fish, wildlife, or plants, or similar ecosystem,

**(iii)** the preservation of open space (including farmland and forest land) where such preservation is--

**(I)** for the scenic enjoyment of the general public, or

**(II)** pursuant to a clearly delineated Federal, State, or local governmental conservation policy, and will yield a significant public benefit, ***or***

**(iv)** the preservation of an historically important land area or a certified historic structure.

26 U.S.C. § 170(h)(4) (emphasis added to the disjunctive "or" by the Court).

The Townleys argue that Congress, by using the disjunctive "or" instead of the conjunctive "and," clearly intended for these conservation purposes to stand independently on their own. And if a conservation easement accomplished *any* of these purposes, the "conservation purpose" requirement is satisfied. In other words, the easement does not need to accomplish *all* of these purposes. The Court agrees with this interpretation.

This interpretation, however, can be reconciled with Treasury Regulation § 1.170A-14(e)(2). That regulation contemplates that a donor of a conservation easement only has to meet one of the designated conservation purposes, but for the deduction to be allowed, the use reserved by the donor cannot *destroy* any other significant conservation interest. For example, the Townleys can satisfy the conservation purpose requirement by demonstrating that their easements preserve farmland and timberland pursuant to a clearly delineated government conservation policy with a significant public benefit. Their easements do not necessarily have to specifically affirm the protection of streams and wetlands. And if they did not reserve the right to conduct timbering operations or any other land disturbing activities on the subject properties, then their deductions could not be disallowed simply because they only satisfied one of the conservation purposes listed in the statute. But if they are going to reserve the right to use and disturb the property that is the subject of the easement, as they intend to do here with continued timbering activities, then they are restricted in how they may conduct those activities if they wish to take advantage of the tax break. They are not prevented from reserving the right to continue to use the land, but they cannot reserve rights that would permit the destruction of other significant conservation interests. To permit someone to benefit from a substantial tax break through an easement that

promotes a significant conservation interest when that same easement also permits the destruction of other significant conservation interests would not be consistent with congressional intent. To put it more bluntly, it would be absurd to suggest that Congress intended to encourage a landowner to preserve timberland at the expense of destroying natural streams and wetlands in the process.[5]

Here, the easements on their face do not permit inconsistent uses that would lead to the destruction of other significant conservation interests. And the Court is convinced that timber operations can be conducted consistent with the easements in a manner that does not lead to the destruction of other significant conservation interests. But as previously discussed, genuine factual disputes exist on this issue. Therefore, the Townleys' motion for partial summary judgment (ECF No. 63) is denied.

### B.    Qualified Appraisal Requirement

The Internal Revenue Code requires taxpayers who claim they donated property to charity to attach a "qualified appraisal" of the property to their tax return under certain circumstances. I.R.C. § 170(f)(11)(D). Section 170 of the Internal Revenue Code

---

[5] The Court understands that the potential destruction of streams, wetlands, and "other fragile natural communities" by the Townleys' reserved timbering activities constitute the significant conservation interests that the IRS relies upon in support of its argument that the deductions should be disallowed pursuant to Treasury Regulation § 1.170A-14(e)(2).

requires that a "qualified appraisal" be "conducted by a qualified appraiser" and be in "accordance with generally accepted appraisal standards and any regulations or other guidance" prescribed by the Secretary. *Id.* § 170(f)(11)(E)(i). The Treasury Regulations that accompany the statute lay out numerous requirements for an appraisal to be deemed "qualified." *See, e.g.*, Treas. Reg. § 1.170A-13(c)(3)(ii) (stating that a qualified appraisal "shall" include the "terms of any agreement or understanding" relating to the use, sale, or other disposition of the property contributed). If a taxpayer fails to attach a "qualified appraisal" to their return, a deduction "shall not" be allowed, I.R.C. § 170(f)(11)(A)(i), unless the taxpayer shows that the failure to meet the requirements was "due to reasonable cause and not to willful neglect." *Id.* § (f)(11)(A)(ii)(II).

The parties both move for partial summary judgment on the issue of whether the Townleys substantiated their claimed charitable contribution deductions with "qualified appraisals." The Townleys ask this Court to find as a matter of law that the Weibel & Santangelo appraisal of the Warren County easement, the Kenny appraisal of the Taliaferro County easement, and the Kenny appraisal of the Wilkes County easement were all "qualified

17

appraisals."  The IRS only moves for partial summary judgment on this issue as to the Weibel & Santangelo appraisal.[6]

The IRS challenges the 2018 Weibel & Santangelo appraisal of the Warren County easement,[7] the 2019 Kenny appraisal of the Wilkes County easement, and the 2019 Kenny appraisal of the Taliaferro County easement as not qualified.  First, the IRS maintains that neither the Weibel & Santangelo appraisal nor the Kenny Wilkes County appraisal include the terms of the FLCUACs which encumbered them at the time of the donation.  Second, the IRS contends that the Weibel & Santangelo appraisal was deficient because it assumed that Warren County would approve a conditional use permit or rezone the property for a new quarry.  Finally, the IRS argues that all three appraisals failed to comply with generally accepted

---

[6] The Townleys obtained a second appraisal of the Warren County property from Kenny & Associates in March 2022—two years after the filing of their initial return including the charitable contribution deduction for the Warren County property.  The IRS argued that the appraisal was not qualified because it was untimely.  The Townleys did not respond to that argument.  Accordingly, the Court does not consider that appraisal in determining whether the threshold qualified appraisal requirement has been satisfied.

[7] The IRS contends that the 2018 Weibel & Santangelo appraisal is inadmissible hearsay given that the Townleys do not designate Weibel or Santangelo as experts and Kenny did not opine that the appraisal was qualified.  The Court disagrees.  With regard to the qualified appraisal issue, the Townleys do not offer the appraisals for the truth of their contents; instead, they offer them to show that they complied with § 170(f)(11) and its regulations.  The Court is not called upon to evaluate the actual valuations in the appraisals but simply whether the necessary elements are present.  Therefore, the Court will consider the appraisal to the extent it is offered to prove that the Townleys made disclosures in accordance with § 170(f)(11) and its regulations to the IRS in support of their deduction for the charitable contribution of the Warren County easement.

appraisal standards because they all used Discounted Cash Flow ("DCF") analysis to value the property without properly considering alternative methods of valuation: the comparable sales method and the royalty method.

The Court finds that the Townleys have satisfied the "qualified appraisal" requirements as a matter of law.  These requirements are part of a disclosure regimen that is designed to provide the IRS with sufficient information so that it can understand the basis for the deductions in order to conduct further investigation if necessary.

Regarding the IRS's criticism of the valuation method used in the 2018 Weibel & Santangelo appraisal and the 2019 Kenny appraisals, the Court observes that whether an appraisal is "qualified" does not depend on the substantive correctness of the appraiser's chosen valuation method so long as the appraiser provides a specific basis for the chosen method.  The 2018 Weibel & Santangelo appraisal and the 2019 Kenny appraisals both provided a method of valuation and explained specific bases for their valuations.  The Court thus finds that the appraisals satisfied the regulatory requirements of providing a method of valuation and explaining the specific basis for the valuation. *See* Treas. Reg. §§ 1.170A-13(c)(3)(ii)(J)-(K), 1.170A-17(a)(3)(viii)-(ix).[8]   The

---

[8] For donations after January 1, 2019, "qualified appraisal" is further defined at Treasury Regulation § 1.170A-17.

Townleys' motion for partial summary judgment on this issue (ECF No. 65) is granted. The IRS's motion for partial summary judgment (ECF No. 86) as it relates to whether Weibel and Santangelo's use of the income method and DCF analysis rendered their appraisal unqualified is denied.

The IRS further contends that the 2018 Weibel & Santangelo and 2019 Kenny Wilkes County appraisals failed to comply with the qualified appraisal requirements because they did not specifically disclose the terms of the FLCUACs encumbering the properties, which would have to be removed before the properties could be used for mining operations. The IRS also argues that the 2018 Weibel & Santangelo appraisal was deficient because it assumed without sufficient support that the property could be rezoned for mining or approved for a conditional use permit. The Townleys respond that they substantially complied with the qualified appraisal requirements.

When a taxpayer fails to strictly comply with the "qualified appraisal" requirements, the taxpayer may nevertheless receive a charitable contribution deduction if he or she "substantially complied" with those requirements. An appraisal substantially complies if it furnishes most of the required information and the defects are not so significant such that they fail to establish the "substance or essence" of whether a charitable contribution

was actually made. *Bond v. Comm'r*, 100 T.C. 32, 41–42 (1993)
(quoting *Sperapani v. Comm'r*, 42 T.C. 308, 331 (1964)).

The Court finds that the Townleys substantially complied with
the qualified appraisal requirements.  This is not a case where a
taxpayer wholly neglected to mention that the subject property was
located in an area zoned for a use incompatible with the proffered
highest and best use.  Rather, the Townleys readily disclosed that
the Warren County property was in an area zoned for forestry and
agriculture and that in order to operate a granite mine, it would
be necessary to obtain a conditional use permit.  Def.'s Mot.
Partial Summ. J. Ex. 6, Weibel & Santangelo Appraisal 71–72, ECF
No. 86-6 at 78–79.  The appraisal then concluded that obtaining a
permit was reasonably probable based on the property's "location
and surrounding uses" given that there were "several active mines"
in Warren County.  *Id.*  The Court further finds that the appraisals
substantially complied with the requirement to include the terms
of the FLCUACs.  *See* Treas. Reg. §§ 1.170A-13(c)(3)(ii)(D),
1.170A-17(a)(3)(ii) (requiring that a "qualified appraisal"
include "the terms of any agreement . . . that relates to the use"
of the subject property).  Although the appraisals omitted the
terms of the FLCUACs, they disclosed the FLCUACs' encumbrance of
the properties and the clerks' offices at which the FLCUACs were
recorded.  Weibel & Santangelo Appraisal, ECF No. 86-6 at 229, ¶
5; Pls.' Mot. Partial Summ. J. Ex. 30, Kenny Wilkes County

Appraisal 1758, ECF No. 65-30 at 157, ¶ 5.  The Court finds those
disclosures sufficient.  Notably, the IRS admits that the FLCUACs
were not permanent covenants because they could be removed through
payment of a statutory fee.  The IRS's core assertion is that the
existence of the FLCUACs (and the cost of removal) affected the
value of the easements, which goes to the amount of the deduction
and not whether the Townleys meet the threshold requirements for
a charitable contribution deduction.  The IRS's motion for partial
summary judgment (ECF No. 86) as it relates to whether the 2018
Weibel & Santangelo appraisal was "qualified" is thus denied.  The
Townleys' motion for partial summary judgment "regarding qualified
appraisal" (ECF No. 65) is granted.

    C.   <u>Baseline Documentation</u>

    The IRS contends that the deductions should be disallowed
because the Townleys failed to comply with the baseline
documentation requirements for charitable contribution deductions
under Treasury Regulation § 1.170A-14(g)(5).  The Townleys seek
summary judgment on this issue.  In support of their motion, the
Townleys argue that they were not required to file baseline
documentation based on the terms of each conservation easement
deed and that even if they were required to file baseline
documentation, they met regulatory requirements.  They also
contend that Treasury Regulation § 1.170A-14(g)(5) is invalid
because it facially contradicts § 170(h)(5) and because it

contradicts § 170(h)(4) as applied.    The Court addresses each argument in turn.

> 1.    *Were the Townleys Subject to the Baseline Documentation Requirements in Treasury Regulation § 1.170A-14(g)(5)?*

Treasury Regulation § 1.170A-14(g)(5) imposes certain baseline documentation requirements on donors of conservation easements.   Specifically, the regulation states that "In the case of a donation . . . of any qualified real property interest when the donor reserves rights the exercise of which may impair the conservation interests associated with the property," the donor must, prior to the donation, provide to the donee "documentation sufficient to establish the condition of the property at the time of the gift."   Treas. Reg. § 1.170A-14(g)(5)(i).   The Townleys argue that because the terms of the deed state that they cannot exercise their reserved rights in a manner that would impair the conservation purposes of the deed, the baseline documentation requirement does not apply to them.   The Court disagrees.   The plain language of the regulation states that the baseline documentation requirement applies whenever the donor reserves rights that may impair the conservation interests associated with the property.   Because the Townleys reserved certain rights and those rights "may" impair the conservation interests associated with each property, the Townleys were required to provide baseline documentation when they donated the easements.

2. *Did the Townleys Comply with Baseline Documentation Requirements?*

Having decided that the Townleys were required to provide baseline documentation, the next issue is whether the documentation they submitted with their tax returns documenting the baseline condition of the subject properties met regulatory requirements.[9]  When a deed contains restrictions regarding a particular natural resource (such as water) to be protected, the Treasury Regulations require baseline documentation establishing "the condition of the resource at or near the time of the gift." Treas. Reg. § 1.170A-14(g)(5)(i)(D).  The purpose of this requirement is "to protect the conservation interests associated with the property, which although protected in perpetuity by the easement, could be adversely affected by the exercise of the reserved rights." *Id.* § 1.170A-14(g)(5)(i).  Taxpayers may satisfy this requirement in a number of ways, including through (1) survey maps showing the property line and other contiguous or nearby protected areas; (2) scaled maps showing all man-made improvements, vegetation, flora, fauna, land use history, and distinct natural features; (3) aerial photographs taken as close as possible to the date the donation was made; and (4) on-site

---

[9] The IRS focuses its baseline documentation attack on the need to protect streams and wetlands.

photographs taken at appropriate locations on the property.  *Id.*
§ 1.170A-14(g)(5)(i)(A)-(D).

Elizabeth Branch, a wildlife biologist, prepared
environmental baseline documentation reports for each of the
properties.  Each report contains numerous photographs of the
streams on each property and a map identifying each property's
location in its relevant watershed.  The reports also contain a
map identifying 200-foot riparian buffers, which are meant to
protect the water quality of the streams.  The reports go on to
describe the benefits of the conservation easements, such as
enhancing stream buffers and reducing non-point source pollution—
both critical for protecting water quality.  The IRS contends that
this is insufficient, however, given that the baseline reports do
not contain information regarding the baseline water quality of
the streams and wetlands located on the easements.  The IRS argues
that this information was required given that one of the
conservation purposes outlined in each deed is to protect the water
quality of streams and wetlands.  According to the IRS, without
knowledge of the baseline water quality, Oconee River Land Trust
cannot monitor water quality to determine whether the Townleys are
complying with the requirements of the deed given that they
reserved rights, like planting non-invasive native species,
conducting logging operations, and applying herbicides—all of

25

which could affect the quality of streams and wetlands on the properties.

The Court finds that the Townleys' baseline documentation is sufficient to meet the requirements of Treasury Regulation § 1.170A-14(g)(5). Critically, the IRS does not dispute that all three baseline reports include acknowledgments signed by the donee, Oconee River Land Trust, that each report accurately represents the property at the time of the conveyance of the conservation easement. By signing this acknowledgment, Oconee River Land Trust certified that the reports sufficiently described the condition of the property, including water quality, for purposes of monitoring and enforcing the terms of each easement. The Court is satisfied that the Townleys' have substantially complied with the baseline documentation requirement. The Townleys' motion for partial summary judgment regarding baseline documentation (ECF No. 60) is thus granted. The IRS's motion for partial summary judgment (ECF No. 86) as it relates to the adequacy of the Townleys' baseline documentation is denied. Given the Court's conclusion that the Townleys' baseline documentation was sufficient, the Court finds it unnecessary to address the arguments regarding the validity of Treasury Regulation § 1.170A-14(g)(5) in light of § 170(h).

## II.  Valuation of the Easements

The IRS strongly disputes the values that the Townleys assigned to their conservation easements.  The value of an easement for tax purposes is "the fair market value of it at the time of the contribution."  *TOT Prop. Holdings, LLC v. Comm'r*, 1 F.4th 1354, 1369 (11th Cir. 2021) (alterations adopted) (quoting Treas. Reg. § 1.170A-14(h)(3)(i)).  "Fair market value" is defined as "the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts."  Treas. Reg. § 1.170A-1(c)(2).  To determine the value of the easement, one must ascertain how the restrictions in the easement diminish the value of the donor's remaining fee interest in the property.  One accepted method for making that determination is to compare the value of the property before the easement with its value after the easement.  *TOT Prop. Holdings*, 1 F.4th at 1369.

### A.  Highest and Best Use

To determine the "before value," the Treasury Regulations require a determination of the property's "highest and best use." *Id.*  That highest and best use "must take into account not only the current use of the property but also an objective assessment of how immediate or remote the likelihood is that the property, absent the restriction, would in fact be developed."  *Id.* (quoting

Treas. Reg. § 1.170A-14(h)(3)(ii)).  The before valuation must also take into account any effect from "zoning, conservation, or historic preservation laws that already restrict the property's potential highest and best use." *Id.* (quoting Treas. Reg. § 1.170A-14(h)(3)(ii)).  Here, the Townleys' proposed highest and best use for each subject property is granite mining.  The IRS disagrees, arguing that the "before" value should be based on each property's current use—vacant land used for timber extraction and hunting.

The highest and best use is one that is "reasonable and probable" and that supports the "highest present value," with a "focus . . . on 'the highest and most profitable use for which the property is adaptable and needed or likely to be needed in the reasonably near future.'" *Id.* (quoting *Palmer Ranch Holdings, Ltd.*, 812 F.3d 982, 987 (11th Cir. 2016)).  Where the parties propose different uses—as they do here—the court considers if "there is too high a chance that the property will not achieve the proposed use in the near future, in which case, the use is too risky to qualify." *Id.* (quoting *Palmer Ranch*, 812 F.3d at 1000).  Put another way, if a proposed use is too risky for a "hypothetical willing buyer to consider the use in deciding how much to pay for the property, then the use should not be deemed the highest and best available." *Id.* (alterations adopted) (quoting *Palmer Ranch*, 812 F.3d at 1000 n.14).  Accordingly, the question before the Court

is whether a hypothetical willing buyer would have considered the subject properties as appropriate sites for granite mines.  That question depends on the reasonable probability that the properties could have been developed into granite mines in the near future.

The Townleys' experts opine that the highest and best use of each property pre-easement is as a granite mine, which conclusion is supported in part from core drilling and sampling conducted on the subject properties.  The IRS responds that this proffered highest and best use is too speculative because the properties were still being used for timber harvesting and recreational purposes at the time of the contribution, had no track record of earnings from granite, insufficient evidence existed of market demand for granite in the relevant markets, and the Taliaferro County property was not located in an area specifically zoned for granite mining.  The Court addresses each argument in turn.

> 1.    *Did the Townleys Point to Sufficient Evidence to Create a Genuine Fact Dispute as to the Legal Permissibility of Granite Mining on the Taliaferro County Property?*

Whether each property had a reasonable probability of being developed into a granite mine depends partly on whether it was legally permissible to operate a granite mine on each property. The IRS moves for partial summary judgment on the issue of whether granite mining was a legally permissible use of the Taliaferro County property given the County's zoning ordinance, which did not

explicitly permit mining.  The IRS points to evidence that its expert called a Taliaferro County official, who allegedly told the expert that it was unlikely that an application for a zoning variance for granite mining would be granted.  Brigden Dep. Ex. 6, Brigden Expert Report 25, ECF No. 109-3 at 42.  The Townleys pointed to evidence from two of their experts, Paul W. Hitchcock and Barry A. Fleming, who concluded that a zoning variance for mining would likely be granted for the Taliaferro County property.[10]  That evidence explained that given Taliaferro County's shrinking population and desire for economic development, it was likely that the County would benefit from having a granite mine due to the potential for increased jobs.  Indeed, the County's state congressional representative and the Taliaferro County Attorney both indicated that good projects offering the opportunity for economic development in the County would be welcome.  Fleming Decl. Ex. A., Fleming Expert Report 6-7, ECF No.

---

[10] The IRS, via their motion for partial summary judgment, moved to exclude the opinion of Mr. Hitchcock to the extent the Townleys offered him as an expert.  Mr. Hitchcock is an attorney who specializes in real estate matters, including rezoning requests and zoning opinions, in rural east Georgia.  He has practiced law for over fifteen years.  Mr. Hitchcock handles approximately 40-45% of the nearly 200 real estate closings handled by his firm, many of which involve zoning issues.  Further, Mr. Hitchcock obtained a special use mining permit in Hancock County, which neighbors Taliaferro County.  He represented that he used the same general methods for analyzing the opportunity for mining in Taliaferro County as he had used in Hancock County.  The Court is satisfied based on these representations that the IRS's criticisms regarding Mr. Hitchcock's qualifications, opinions, and analysis go to the weight of his testimony, not its admissibility.  Accordingly, the Court denies the IRS's motion to exclude the opinion of Mr. Hitchcock.

106-2 at 7-8.   Another Townley expert, Douglas A. Kenny, interviewed the Chairperson of the Taliaferro County Development Authority, who told him that mining was possible and "gave no negative indication" regarding the possibilities of rezoning, changing the ordinance, or mining in general.[11]  Kenny 2d Decl. Ex. A, Kenny & Associates Review Appraisal Report, ECF No. 104-2 at 45.  The experts also candidly acknowledged potential opposition to the mine due to the presence of the Dark Sky Preservation Area close to the subject property but opined that limiting the mine's operation to daylight hours could help mitigate citizen opposition.  Fleming Expert Report 7, ECF No. 106-2 at 8.

The Court is satisfied that the Townleys have pointed to sufficient evidence from which a reasonable jury could conclude that obtaining a zoning variance in Taliaferro County was reasonably probable.  *See Palmer Ranch*, 812 F.3d at 996. Accordingly, the IRS's motion for partial summary judgment (ECF No. 85) on this ground is denied.

> 2.  *Effect of Forest Land Preservation Covenants on Valuation*

The IRS also takes the position that existing covenants on the property prevent the development of a granite mine.  The Townleys moved for a partial summary judgment (ECF No. 62) on this

---

[11] The Court assumes the Townleys will be able to present this arguably hearsay evidence in admissible form at trial.

issue, arguing that the presence of the FLCUACs on each subject property did not render granite mining legally impermissible. In response, the IRS acknowledged that the FLCUACs were not permanent covenants and that taxpayers may pay a statutory penalty to remove the covenants before they expire. *See* O.C.G.A. § 48-5-7.7(m). Nevertheless, the IRS maintains that a genuine fact dispute exists as to whether there was a reasonable probability a willing buyer or seller would pay the penalties to mine the properties. The Court agrees that the FLCUACs' encumbrance of the properties will be a factor in the valuation of each property and that genuine factual disputes exist as to their impact on the feasibility of developing the property and its valuation. Accordingly, the Townleys' motion for partial summary judgment regarding the FLCUACs (ECF No. 62) is denied.

       3.   *Did the Townleys Point to Sufficient Evidence to Create a Genuine Factual Dispute as to Market Demand?*

The Court also finds that genuine factual disputes exist as to whether adequate market demand exists to make a mining operation on the property feasible. *See Palmer Ranch*, 812 F.3d at 998. The Townleys' crushed stone market experts, Chris Summers and Richard Capps, opined that a granite supply deficit existed in the markets that the proposed quarries would likely serve. Def.'s Mot. Partial Summ. Ex. 16, Burgex Expert Report Taliaferro County Property 30, ECF No. 84-16 at 30; Def.'s Mot. Partial Summ. Ex. 17, Burgex

Expert Report Wilkes County Property 30, ECF No. 84-17 at 30;
Def.'s Mot. Partial Summ. J. Ex. 15, Capps Expert Report 24-25,
ECF No. 84-15 at 32-33. Summers and Capps further opined that the
proposed Townley quarries could economically serve this demand.
The IRS pointed to evidence from its own experts potentially
undermining this market evidence. *See, e.g.*, Def.'s Mot. Partial
Summ. J. Ex. 13, Mudd Rebuttal Report, ECF No. 84-13. Thus, fact
disputes remain on the issue of whether sufficient demand existed
in each relevant market to support a granite mine such that it was
reasonably probable that the subject properties would be developed
into granite mines in the reasonably near future. Having decided
that the Townleys pointed to sufficient evidence that granite
mining was a reasonably probable use for the subject properties
within the near future, the Court finds that a reasonable jury
could conclude that the subject properties had a highest and best
use of granite mining. *Cf. United States v. 320.0 Acres of Land,
More or Less in Monroe Cnty.*, 605 F.2d 762, 817 (5th Cir. 1979)
(explaining, in the takings context, "the jury decides the highest
and best use issue" when the landowner produces "credible evidence"
that a potential use is "reasonably practicable and reasonably
probable within the near future"). Thus, summary judgment is not
appropriate on this issue.

B.   Proper Methodology

Having found that genuine fact disputes exist on the highest and best use of each subject property, the Court must next determine whether the Townleys' methodology for valuing that highest and best use is inappropriate as a matter of law.  The Townleys' experts rely upon an income model for evaluating the value that the granite adds to the property.  The IRS argues that the Court should reject that model as a matter of law.

The IRS urges that the comparable sales method is the preferred valuation method.  Comparability "is largely a function of three variables: characteristics of the properties, their geographic proximity to one another, and the time differential." *320.0 Acres of Land*, 605 F.2d at 798; *see also Palmer Ranch*, 812 F.3d at 987 ("The 'comparable sales' method functions by: (1) Locating [parcels] as physically similar (comparable) as possible to the subject [parcel] which (2) have been sold on the open market in noncollusive, nonforced sales for cash or cash equivalent, within (3) a reasonable time of the date for which a value of the subject property is desired." (alterations in original) (quoting *Wolfsen Land & Cattle Co., v. Comm'r*, 72 T.C. 1, 19 (1979))).

Although the Townleys' experts acknowledged that the comparable sales method is the default valuation method, they rejected that method here because of the lack of comparable sales of property with known mineral reserves.  They were unable to

locate such comparables after searching extensively on public databases. They explained that because mineral information is closely held as proprietary by market actors, the comparable sales method is considered impractical for mineral properties. Accordingly, the experts opine that the use of the income method through an owner-operator model was the most appropriate valuation method here.

Although the Court recognizes that comparable sales are generally the "best" evidence of fair market value, that method may not capture fair market value when truly comparable sales cannot be reasonably located. The specific circumstances may warrant the use of another valuation method, and the Court finds that under the circumstances in this case, the income method is sufficiently reliable to satisfy the requirements of Rule 702 of the Federal Rules of Evidence.[12]

The test for fair market value is "the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both

---

[12] As previously indicated, the Court denied in a separate written order the IRS's motion to exclude the Townleys' experts. Those experts supported the use of the income method as a reliable valuation method under the circumstances presented here. Furthermore, the IRS did not point to any binding case law indicating that as a matter of law this method would never be appropriate for valuing properties similar to the Townleys' properties. Of course, the IRS will have a full opportunity to convince the jury that it should not accept the opinions of the Townleys' experts. Declaring that those opinions should be disregarded as a matter of law, however, would be an unauthorized usurpation of the jury's role by this Court.

having *reasonable knowledge of relevant facts*." Treas. Reg.
§ 1.170A-1(c)(2) (emphasis added). As previously explained, a
genuine factual dispute exists as to whether the property in
question could have feasibly been used as a granite mine. If the
jury concludes that the granite mine was the property's highest
and best use, then it must decide what that mining operation adds
to the value of the property. The evidence presented by the
Townleys and the IRS is in conflict as to the best and most reliable
method for making that determination. The jury is not bound to
follow the Townleys' income model, but the Court finds it
sufficiently reliable under the facts and circumstances in this
case such that the jury should not be prevented from considering
it as part of the fair market value inquiry. Accordingly, the
IRS's motion for partial summary judgment (ECF No. 84) as to
valuation is denied.

CONCLUSION

For the foregoing reasons, the Townleys' motions for partial
summary judgment docketed at ECF Nos. 58, 60, 61, and 65 are
granted. The Townleys' motions for partial summary judgment
docketed at ECF Nos. 62 and 63 are denied. The IRS's motions for
partial summary judgment docketed at ECF Nos. 84, 85, and 86 are
denied. The Court defers ruling on the Townleys' Motion for
Judicial Notice Regarding Appraisal Standards (ECF No. 110). The
IRS's motion docketed at ECF No. 98 is terminated as moot.

IT IS SO ORDERED, this 27th day of March, 2024.

S/Clay D. Land
CLAY D. LAND
U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA